CASE 32—ACTION FOR DAMAGES FOR DEATH OF PLAINTIFF'S INTESTATE—
    MARCH 29.

# Thomas, Adm'r. v. Maysville Gas Co.

### APPEAL FROM MASON CIRCUIT COURT.

JUDGMENT FOR DEFENDANT GAS COMPANY AND PLAINTIFF APPEALS.
    REVERSED.

ACTION FOR CAUSING DEATH, AND FOR CAUSING SUFFERING—ELECTION
    OF REMEDIES—FAILURE TO INSULATE WIRES.

Held: 1. It was proper for the court to require the plaintiff to
    elect whether he would prosecute his statutory cause of action
    for the death of his intestate or his common-law action for the
    suffering.
2. The Gas Company having received a consideration for supply-
    ing the wires of the street railway company with electricity, it
    was required to see that the street railway performed its duty
    to have the wires insulated before they were charged, and for
    its failure to do so, it is liable in damages for an injury thereby
    sustained, although it did not control the wires.

A. E. COLE & SON AND THOMAS R. PHISTER, FOR APPELLANT.

A. M. J. COCHRAN, FOR APPELLEES.

    (No brief in record.)

OPINION OF THE COURT BY JUDGE PAYNTER—REVERSING.

    This action was instituted by the appellant against the
Maysville Street Railway Company and the appellee, the
Maysville Gas Company. The street railway company
operated an electric car line in the city of Maysville, and
the appellee, the Maysville Gas Company, was engaged in
the business which its name suggests; and, in addition

thereto, it had in its possession and control a dynamo, and thus supplied the street railway company with electricity to operate its car line. The wires of the street railway company were constructed along the streets of the city, and a guy wire had been broken loose, and, not being properly insulated, it was charged with electricity; and as the plaintiff's intestate, a boy, was passing along, he came in contact with it, which resulted in producing his death. The trial resulted in a verdict against the street railway company, from which no appeal seems to have been prosecuted. At the conclusion of the testimony for the plaintiff, the court instructed the jury to find for the appellee, the Maysville Gas Company, and it is to review the action of the court in that regard that this appeal is prosecuted. So the important question in this case is as to whether it is responsible for the death of the boy, if it was the result of negligence in failing to keep the wires charged by it with electricity properly insulated.

There are some minor questions raised, but it is sufficient to say that we agree with the court below in regard thereto. However, at this point we will add that the court properly compelled the appellant to elect which cause of action he would prosecute; his right to recover being restricted either to the common-law cause, for mental and physical suffering, or the statutory cause, for the death of his intestate. Railway Co. v. Barclay's Adm'r. (Ky.) 43 S. W., 177. It is not necessary to consider the question as to whether the motion was made in time, as the case is reversed, and on the next trial the motion can be heard at the proper time.

The street railway company owned and had charge of the wire, and the gas company generated and sent in to the

wire the electricity. The gas company received so much per month for supplying the wires of the street railway company with electricity to operate its line of street cars, and it had no interest in the car line, except that its income might enable it to pay the bill for the electricity. That there was a duty imposed by law upon the street railway company to keep its wires properly insulated, so that those whose business or pleasure brought them in dangerous proximity to them might be protected from the deadly current which they conducted, can not be questioned. Without the electric current which the gas company sent through them, contact with them was harmless. When so charged, they became instruments of death, threatening the lives of those who, perchance, came in contact with them. Did the fact that the gas company supplied the harmless wires with the force which converted them into a death-dealing agency make it responsible for the injury which resulted in the death of the intestate? The exact question submitted has not, so far as we are aware, been answered by any court of last resort. Some cases are cited by counsel, but the facts of those cases are not similar to the facts of this case. Therefore we must find some signboard along the new road, and, if we can not so find the way to a proper conclusion, we will be forced to swing a sickle into the field of reason, and there harvest a principle which can be crystallized into a just rule to apply to cases like this one. By the machinery in use by the gas company, it produced and controlled the electricity. It is presumed to, and did, know the dangerous force it was putting in motion, and that it constantly imperiled the lives of those who passed along the streets where the wires were in use, unless they were properly

swung and insulated.   Knowing the dangerous character of the force it supplied, it was bound to use the care commensurate with the danger of its employment, so as to protect those who passed along the streets or places where the wires were placed.  The electric current went in a continuous stream from the power house through the wires. Its flow could only be stopped by the agency at its source That agency controlled the electric current at the furtherest point from the power house as it did at the point where the wires of the street-railway company connected with the generator.   From the instant the force was generated, it remained under the control of the appellee.   As it were, the hand that controlled the generator applied the deadly force to the body of the intestate.   Considering the dangerous character of the force produced by the gas company, there was a duty imposed on each to see that the wires into which it was sent were properly insulated.   The danger was exactly the same whether the wires were owned by one or both of the companies.   When one through the instrumentality of machinery can accumulate or produce such a deadly force as electricity, he should be compelled to know that the means of its distribution are in such condition that those whose business or pleasure may bring them in contact with it may do so with safety.

It is argued on behalf of the gas company that a manufacturer of electricity, who delivers it to another, and thus parts company with it,—its dangerous character not being concealed, and such other person being competent to look after and control it,—does not owe any duty to any one. It is assumed, if this be not true, that every person who delivers a dangerous substance into possession of another, under a contract of sale or hiring by which he parts with

the control, would not be liable for the negligent acts of the person to whom it is delivered, after the delivery. In the first place, electricity is unlike any other dangerous matter or force known to science. In the second place, it was not delivered to the street-railway company, and placed in its possession and control. The control of it, from the very nature of it, remained with the gas company. As an evidence of it, when the boy was held by the wire he could not be rescued until the gas company stopped the electric current. An example of the delivery of electricity is furnished when an electric company charges a battery, and delivers it to the owner of an automobile or an electric launch, in which event no duty would rest upon the company as to the manner of its use. There can be an actual delivery of powder, dynamite, or nitroglycerine, and a complete control transferred to another. Therefore it does not follow that, because it has been sold and delivered to another, there is a responsibility upon the seller to see that it is properly used. If A should accumulate a great body of water above a city, and agree with B to supply him with whatever quantity he desired, provided he would furnish a pipe to convey it to the place where he desired to use it, and thereupon B connected with the body of water a pipe which was not properly constructed so as to convey the water safely, and in consequence thereof the water should escape from the pipe and destroy the property or lives of others, could A. escape liability by saying that he sold the water to B. for so much per gallon, and delivered it to him at the point of connection, and he no longer had any control over it, and consequently no liability? We think not. The case we have under consideration is even stronger than the illustration given. One must use his own property

Thomas, Adm'r., v. Maysville Gas. Co.

so as not to do injury to another.  The use of the wires
would have been harmless, except for the current of elec-
tricity; and that current as sent into the wires by the
appellee, producing the death of plaintiff's intestate.  Then
it was the use of the force (its property) it generated which
produced the injury.  If the wires were not properly in-
sulated, and the death resulted therefrom, then both com-
panies are liable, as it was the duty of the street-railway
company to have its wires properly insulated, and there
was a duty resting on the gas company to see that it was
done, before charging them with electricity.  This court in
the case of McLaughlin v. Electric Light Co., 100 Ky., 173,
(37 S. W., 851), (34 L. R. A., 812), had under consideration
a case where the wires of an electric company produced the
injury, and the court said:  "But by far the most import-
ant question involved is the law applicable to the case.
Electricity is a powerful and subtle force, and its nature
and manner of use not well understood by the public; nor
is its presence easily determined or ascertained.  Its use
for private gain is very extensive, and becoming more and
more so.  The daily avocation of many thousands of neces-
sity brings them near to this subtle force, and it seems
clear that the electric companies should be held to the
use of the utmost care to avoid injuring those whose
business or pleasure requires them to come near such a
death-dealing force."  From this it will be seen that the
court is of the opinion that electric companies should
use the utmost care to avoid injuring persons who may
be brought in contact with wires charged with electricity.
The judgment is reversed for proceedings consistent with
this opinion.

Judge DuRelle and Burnam dissenting.