### BENSON v. AMERICAN ILLUMINATING CO.

(Steuben County Court. January 21, 1907.)

ELECTRICITY—ELECTRIC COMPANIES—DEFECTIVE WIRING BY CUSTOMER—SHUTTING OFF CURRENT.

Where after an electric company has wired an office for light, the customer makes defective connections of other wires with the wiring, causing danger of fires, and refuses to remedy the same, the company, which in case of fire therefrom would be liable for damages to third persons, may shut off the current, without liability to the customer therefor.

Appeal from Justice Court.

Action by Stephen S. Benson against the American Illuminating Company. From a judgment for plaintiff, defendant appeals. Reversed.

Orcutt, Robbins & Brown, for appellant.
Whiteman & Hill, for respondent.

BURRELL, J. This action is brought by the plaintiff, who is a dentist by profession, against the defendant, for damages occasioned by the defendant company in refusing to furnish the plaintiff electric light for the period of about nine days. The evidence shows that about the middle of June, 1905, on the application of the plaintiff, the defendant installed a meter in the plaintiff's place of business, in the city of Hornell, N. Y., did necessary wiring, and made connections with a bull's-eye reflecting light which the plaintiff then had and used in front of his dentist chair, for use on dark days and at night, for illuminating a patient's mouth. Subsequently the plaintiff did some wiring himself, beyond this light to a sign out of a window and to a lathe, and which was a live wire beyond this light when the switch was open.

Subsequently the defendant informed the plaintiff that the wiring he had done himself was defective and. dangerous; that the connection near the chair used by patients was liable to set a lady's dress on fire. The defendant thereupon cut off the defective wiring, and the plaintiff then agreed not to connect up the defective wiring again, but subsequently did so, by making slight changes, and also attached two more wires back of the bull's-eye light connected up by the defendant and near the meter, and was again on two occasions informed by the defendant, in effect, that the wiring was defective and dangerous and liable to set the building on fire and requested to remedy the same, which the plaintiff on the last occasion refused to do, and on November 21. 1905, the defendant, finding the wires still remaining in the same condition, shut off the electricity, and the plaintiff was without electric light for the space of about nine days; the light being again turned on by the defendant after service on it of a notice in writing under section. 65 of the transportation corporations act.

It would seem to me from the evidence in this case that the plaintiff had a duty to perform in seeing to it that the wires he had attached and which carried the electricity around his office were made safe, and especially so when his attention had been repeatedly called to the fact that his wiring was dangerous and liable to set a patient's dress on fire as well as the building. Under such circumstances it was his duty to have made it safe, without waiting for interference on the part of any other person, and, when the plaintiff failed to do so, it became the duty of the defendant, the defendant having full knowledge of the dangerous conditions existing, to see to it that no one was injured by the electricity which it produces and sent through these defective wires.

If the plaintiff suffered the loss of work during the period the light was off, he contributed to it by absolutely refusing to put his wires in proper condition to be safely used. In the case of Isaac Thomas. Administrator, v. Maysville Gas Company, Impleaded, etc. (Ky.) 56 S. W. 153, 53 L. R. A. 147, which holds "that a corporation which generates and sends electricity into the wires of a street railway company is chargeable with the duty to see that such wires are properly insulated, and it, as well as the street railway company, is liable for failure to perform that duty, if a person is killed because the wires are not properly insulated,". the principle is the same as the case at bar. In the case at bar the defendant is a corporation generating and sending electricity into its wires as well as the wires belonging to others. It was sending its electricity into the defective wires of the plaintiff, knowing the wires to be defective and dangerous to persons coming in contact therewith as well as to the building in which they were located, and it was the duty of the defendant to remove the danger when the plaintiff refused so to do.

In the case above cited the Maysville Gas Company generated and furnished the electricity to the Maysville Railway Company, and delivered it into the wires of the street railroad company, and on the occasion of accident, by virtue of the wires owned by the street railway company, the question was squarely presented as to which company was liable, and the court there says:

"That there was a duty imposed by law upon the street railway company to keep its wires properly insulated, so that those whose business or pleasure brought them in dangerous proximity to them might be protected from the deadly current which they conducted, cannot be questioned. Without the electric current which the gas company sent through them, contact with them was harmless. When so charged, they became instruments of death, threatening the lives of those who, perchance, came in contact with them. Did the fact that the gas company supplied the harmless wires with the force which converted them into a death dealing agency make it responsible for the injury which resulted in the death of the intestate? The exact question submitted has not, so far as we are aware, been answered by any court of last resort. * * * By the machinery in use by the gas company it produced and controlled the electricity. It is presumed to and did know the dangerous force it was putting in motion. * * * Knowing the dangerous character of the force it supplied, it was bound to use the care commensurate with the danger of its employment. * * * Considering the dangerous character of the force produced by the gas company, there was a duty imposed on each to see that the wires into which it was sent were properly insulated. * * * When one through the instrumentality of machinery can * * * produce such a deadly force as electricity, he should be compelled to know that the means of its distribution are in such condition that those whose business or pleasure may bring them in contact with it may do so with safety."

In the case of McLaughlin v. Louisville Electric Light Co. (Ky.) 37 S. W. 851, 34 L. R. A. 812, the court said:

"Electricity is a powerful and subtle force, and its nature and manner of use not well understood by the public; nor its presence easily determined or ascertained. * * * The daily avocation of many thousands of necessity bring them near to this subtle force, and it seems clear that the electric companies should be held to the use of the utmost care to avoid injuring those whose business or pleasure requires them to come near such a death dealing force."

In the case at bar no one was injured, but on the broad ground taken by the cases cited it would seem that the defendant company was clearly within its rights when it refused to longer allow its electricity to run through these defective wires and thus avoid any possible liability of fire or accident to any person on its part, and from the evidence it would seem that the defendant did all in its power to induce the plaintiff to remedy the defects and make the wires safe, and only turned the current off as a last resort after the absolute refusal of the plaintiff so to do; the defendant company understanding the nature of the force they were generating and the dangerous condition of the wiring, and the damage liable to result both to person and property therefrom if longer continued. There was no willful refusal by the defendant to furnish electricity under proper conditions.

From the evidence on the trial there was no question but that the wiring was dangerous. It had been examined by the chief of the fire department and fire warden of the city, who pronounced it dangerous. The defendant company before turning on the current again took the precaution of notifying the owner of the building as well as the fire warden. I think whatever damage the plaintiff suffered by being deprived of this light was largely his own fault, and not the fault of the defendant.

The conclusion arrived at from the cases cited makes it unnecessary to consider the other questions urged on the argument.

The judgment of the court below should be reversed, with costs. Ordered accordingly.