# CHARLESTON.

## FICKEISEN v. WHEELING ELECTRICAL COMPANY.

### Decided March 29, 1910.

1. ELECTRICITY—*Liability of Seller of Electricity to Third Persons —Person Killed by Electricity After Delivery to Buyer.*

   The Wheeling Electrical Company sold electricity to the Bridgeport Electrical Company, to be used by the latter company in lighting the streets of Bridgeport, delivering the electricity from the wire of the Wheeling company to the wire of the Bridgeport company at a point where the wires of the two companies met. A wire of the Bridgeport company conveying the electricity along a street was grounded, and killed a person with its current. The Wheeling company is not liable to an action for the death of such person.

Error to Circuit Court, Ohio County.

Action by A. G. Fickeisen, administrator of John P. Whitney, against the Wheeling Electrical Company. Judgment for plaintiff, and defendant brings error.

*Reversed and Remanded for a New Trial.*

*John A. Howard* and *T. S. Riley,* for plaintiff in error.

*John J. Coniff* and *Geo. Duncan,* for defendant in error.

BRANNON, JUDGE:

John P. Whitney while walking along Howard street in the city of Bridgeport, Ohio, came in contact with a live electric wire ·used for conveying electricity for lighting the streets, which fell from the crossbar on an electric light pole, and said Whitney was killed by the electric current, and his administrator, Algernon G. Fickeisen, brought an action against the Wheeling Electrical Company to recover damages for the death of Whitney, and recovered a verdict and judgment for Five Thousand Dollars damages, and the Electrical Company appeals therefrom.

The Wheeling Electrical Company is a corporation operating an electric power plant in the city of Wheeling for the production of electricity for lighting streets and houses. The Bridge-

port Electrical Company is a separate and distinct corporation whose works are located in the city of Bridgeport, supplying its streets and houses with electricity. The wires which fell to the ground, from whose current of electricity Whitney was killed, belonged to the Bridgeport company. That company owned the poles and wires supplying Bridgeport with electricity. No sale or lease appears. The Bridgeport company had a "cut off" at the end of the bridge for the purpose of cutting off the current from its wires. No corporate action to show that the Wheeling company assumed control of the works of the Bridgeport company.

The ruling question in this case is this: Which of these two companies is liable for the death of Whitney? It is incontestable, it is not contested, that the Wheeling company's contract was to sell to the Bridgeport company electricity to light the streets of Bridgeport. Nor is it contested that the line of the Bridgeport company came to the Ohio end of the bridge, and the line of the Wheeling company came from the West Virginia side of the river to the Ohio end of the bridge, and there connected with the wire of the Bridgeport company, and that the one company held Bridgeport as its territory and the other Wheeling, and that the contract was that the Wheeling company was to deliver electricity to the Bridgeport company at the Ohio end of the bridge on the wires of the Bridgeport company. That was the point of delivery. Thus there was a sale of electricity by the Wheeling company to the Bridgeport company. Wherein does the sale of this electricity differ from a sale of other commodities or things? It is personal property capable of sale. *Terrace Co.* v. *San Antonio Co.*, 82 Pac. Rep. 562. When, under the law of sales, the Wheeling company delivered electricity into the wires of the Bridgeport company at the bridge end the title and possession of the Wheeling company ceased and the Bridgeport company took title and possession then and there. When the electricity passed from the bridge into the streets of Bridgeport it was the property of the Bridgeport company. Surely, this is so, unless, as the circuit judge held, there is a difference between this mysterious thing, electricity, and other salable things. He thought that the current being continuous from the wires of the one company to the wires of the other company, there was no specific point of

delivery where we can say the right to the electricity of one company ended and that of the other began. But we must here apply some rule or principle, and why not the ordinary law of sales? I repeat, that when that electricity passed from the bridge end into the streets of Bridgeport it was, through every foot of its course, the property of the Bridgeport company. The Wheeling company lost title, the Bridgeport company' acquired title then and there. Suppose that at the end of the bridge the Bridgeport company had had a storage battery for storage of the electricity, and that the Wheeling company had delivered the electricity into that storage battery, and the Bridgeport company had taken it therefrom for lighting the streets, and that some one should be killed by the grounding of a defective wire of the Bridgeport company? Would you say the Wheeling company in that case would be liable? We think not. Though this mysterious agent, friendly, yet sometimes deadly to man, be unseen and unseeable, still it had substance so far as to be measured. A certain quantity measured by volts performs, under the law of some of the states, the deadly function of electrocution of the murderer. It is capable of measurement by the volt. In this case it was delivered in quantity known by one company to the other. When it reached the point where the unfortunate Whitney met his death, whose property was the electricity? So far as the human mind can realize it was the property of the Bridgeport company. It was there as an active, deadly agent, producing the death of Whitney, and that agent was the property and in the possession of the Bridgeport company, because it was on its wires. So far as we can use the word "possession" as applied to electricity, (and we can so use the word) it was in the possession of that company. Suppose one man sell to another a dangerous machine, and deliver it at a point, and afterwards it do harm to a third party. Who would say that the seller would be liable? One who lets property for use, like one who sells it, is not responsible to third parties, by reason of a defect in the property. *Griffin* v. *Jackson Co.*, (Mich.) 92 Am. St. R. 496, 548. The strongest view that can be presented to the contrary is, that the Wheeling company had sold this dangerous agent, knowing that it was to be conveyed over wires, and that unless such wires would be good and safe this agent might work harm, and that it must

inspect such wires; that it was using those wires in performing
its contract with the Bridgeport company, and that it must
see to the safeness of the instrument of delivery. But the fault
of this argument is that it disregards the fact that delivery
of the electricity had been already made, at the bridge end.
It did not use the wires of the Bridgeport company. The wires
of the Bridgeport company were not the vehicle of the convey-
ance of electricity as still the property of the Wheeling company.
As well might we say that when the seller of an article conveys
it in his wagon to the place of delivery, and there transfers it
to the wagon of the purchaser, and that harm is done by the
latter's wagon or by the article later on, the seller would still
be liable for damages therefrom. Surely a seller of an article,
dangerous or not, after delivery to the purchaser is not liable
to a third party for damages therefrom. If a manufacturer of
electricity sell it to an owner of an automobile to be used in
running it, the seller would not be liable to a third person
damaged by the badness of the storing receptacle or the auto-
mobile. There is no privity of contract between them of course,
and liability cannot be predicated on contract in such case.
In this case there was no privity of contract between the Wheel-
ing company and Whitney. 92 Am. St. R. 549. If any liability
exists in the case supposed or in this case it must be founded
on tort. The person sought to be charged must owe a duty to
the person seeking to charge him, else there is no actionable
tort. This duty was owing to Whitney from the Bridgeport
company, not from the Wheeling company. The Bridgeport
company sold this electricity to the city and received pay there-
for, and there was no relation between the city and the Wheel-
ing company, or between Whitney and that company. No
matter that this wire was in a public street. It is said that
who so uses the public street for his gain must see to it that the
agency is not dangerous and that his instrumentality is safe.
That is true of him who so uses the street for his purpose; but
this remits us to the same question, whose electricity was it at
the point where Whitney lost his life? Had the Wheeling com-
pany passed its title and made complete delivery? Clearly it
had done so. The Wheeling company was not using the Bridge-
port street. The electricity has passed from the ownership and
possession of the Wheeling company, and delivery to the Bridge-

port company having been made, it was the duty of the Bridge-port company, not of the Wheeling company, to guard the rights of passengers on the public streets. Is it to be said that if an electrical company contracts with the city to furnish electricity for public use on wires owned by the city that it must inspect those wires to see that they are safe when that is the duty of the city? That would require the electrical company to inspect miles and miles of wires and poles to a consuming expense. It cannot be correctly said that an electric power company furnishing power to a street car company is liable for damages from a bad wire or implement owned by the car company, though it was so held in Kentucky in *Thomas* v. *Maysville Co.*, 56 S. W. 153. What right in either case would the furnishing company have to take down a pole or wire in the absence of a contract? It would be guilty of trespass, because the poles and wires are not its property. The Wheeling company had no right to take down or interfere with the wires and poles of the Bridgeport company. If an electrical company contract to furnish a theater with electricity, delivering it on wires owned by the theater owner, it is difficult to realize that the company must, or lawfully can, go into that theater, impeach its apparatus as not sufficient, and change it. No direct authority exactly fitting this case has been found. It is an important case of the first impression in this state. Cases bearing somewhat on it, and in both ways, may be cited. Amid conflict, infallibly present in every case, we are bound to choose those authorities appearing to us the soundest. *Memphis Consol. Gas Co.* v. *Spears,* 81 S. W. 595. In this case a horse was killed by a defective wire while hitched in front of a house, the wire owned by the proprietor of the house conveying the electricity for the illumination of a sign in front of it, the electrical company having no interest or control over the wire. The Supreme Court of Tennessee held the company not liable. It said: "We understand that liability for an injury depends upon the interest in or control over the appliance, and if there is neither interest nor control there would be none". It likened the case to the case of gas furnished by a company to a person delivered in the pipes of the consumer on his own premises, and said that the furnishing company would not be liable for the asphyxiation of the customer or his guest caused by a leakage

from the pipes. It put also the case of a violent explosion of gas accumulated from a leak injuring a neighbor's house, and said that the gas company would not be liable. The court said that the law reports would be searched in vain for a case holding the gas company in such case liable. The court refused to follow a case holding to the contrary of *Maysville Gas Co.* v. *Thomas' Admr.*, 56 S. W. 153. The court approved and followed the Colorado case of *National Fire Ins. Co.* v. *Denver Co.*, 63 Pac. 949. In that case there was damage to a depot by fire caused by a bad electric wire, and the suit was against the electrical company which furnished the current to light the building, the wires being owned by the depot company. The court said: "The electric light company, under a contract with the depot company, connected their system with the wiring and delivered a current for use. This was the extent of the connection between the two companies, and it was simply a delivery of a current for lighting purposes by one, and the payment of an agreed price therefor by the other. Whatever therefore, may have been the character of the wiring or the nature of the work, it was a matter with which the electric company was not chargeable". The company was held not liable. In *Griffin* v. *Jackson Co., supra,* a party injured by want of insulation of a movable wire and handle while using the handle sued the electric light company. The wire and handle were owned by the customer of the electric light company. That company was held not liable. The court said that, "One who lets property for use, like one who sells it, is not responsible to third parties injured by reason of a defect in the article or property let or sold". *Keefe* v. *Narragansette Co.*, 21 R. I. 575, holds likewise. *Harter* v. *Colfax Co.*, 100 N. W. 508, has practically the same holding by the Iowa court.

I extract the following from 1 Joyce on Electric Law, section 445c.: "Where the wiring of a building is not done, or the fixtures not installed, by the company furnishing the electricity and an injury ensues solely as a result of some defect in the wiring or fixtures of which the company had no knowledge, and it is under no contract obligation to keep such wiring or fixtures in proper repair, its only obligation being to supply the electric current, it is not liable for such injury. So, where a depot, which was wired by the company owning it, was destroyed by

fire and the insurance companies, which paid the loss, brought suit against an electric light company which supplied the current for lighting purposes, it was held that a judgment for the latter company would be safely affirmed on the broad ground that such company had nothing to do with the furnishing of the wiring which was put into the building, or with its attachment to the structure, and, if any injury happened or a fire broke out because of defective wiring, or negligent construction, it was a matter for which that corporation could not be held responsible. And 'where the guest at a hotel was injured by the falling of an electric light upon him, which burned his back, it was held that as it was not shown that the wiring was done by the electric light company or that it had any knowledge of the defect therein, such company could not be held liable for the injury caused by the falling of the wire". I have just met with the case of *Peters* v. *Lynchburg Light Co.*, 108 Va. 333, in which a person injured by a shock 'while turning off an incandescent electric light in his kitchen sued the company furnishing the current of electricity. The court held that he was not entitled to recovery as he owned the electric outfit on his premises. The court said the defendant had neither ownership nor control of the appliances on the plaintiff's premises as · the house was wired by the owner, and the wiring and electric equipments were his own property. Upon these principles the Wheeling company is not liable.

The claim is made that the two companies had the same manager or superintendent. That would not alone render it liable. When he was acting in the domain or work on one side of the river he was in the employ of the company having its work there; when on the other side of the river he was acting for the other company. We must so treat his action. His act does not create liability. So some of the workmen of the Bridgeport works were paid by the Wheeling company; but distinct evidence shows that though the pay went through the hands of the Wheeling company it was charged to the Bridgeport company. Indeed, the evidence is that the pay went from the Bridgeport company. Now, this is the strongest evidence presented, the only evidence, to show liability on the Wheeling company. Is it in the power of a mere employee, as a manager, to thus embroil one corporation for the liability and tort

of another, without distinct corporate authority or recognition, of which there is no evidence? There is no evidence to show a sale or lease of the works of the Bridgeport company to the Wheeling company, no color of corporate action by either company to show an assumption of control by the Wheeling company. If a superintendent were to order an employee working in Bridgeport for the Bridgeport company to go over to Wheeling to work on the lines of the Wheeling company, a few instances of which were shown, that would not bind the Wheeling company for the torts of the other company. This would put the company under the power of a mere employee. His action would be no estoppel on the company. This evidence, these facts are countervailed and overruled by the uncontested facts that these were separate corporations, having different localities for business, and that the wires, poles and other instruments of conveyance of electricity in Bridgeport were the property of the Bridgeport company. These are the more potent and controlling factors of the case.

Instructions embracing the legal propositions here propounded were refused the defense, and instructions to the reverse given the plaintiff. In view of the legal propositions sufficiently stated herein we do not deem it necessary to discuss those instructions in detail. We think that the instructions asked by the defendant company directing the jury to find for the defendant should have been given, and of course we think the overruling of the motion for a new trial was error.

The defendant filed a plea contesting the jurisdiction of the county court of Ohio county to appoint an administrator for the deceased, as the death occurred in Ohio. As the defendant company had its habitat in Ohio county we think the demand against it was property of the estate of the deceased so as to confer such jurisdiction. *Richards* v. *Riverside Iron Works,* 56 W. Va. 510.

As to the plea contesting the competency of Fickeisen to be appointed administrator, that cannot be contested collaterally.

The declaration alleges that the poles and wires were owned and controlled by the Wheeling company, whereas the proof was that they were owned and controlled by the Bridgeport company, and that this was a variance calling for dismissal of

the suit. We do not regard it as a variance, but only failure of proof of matter material for recovery.

We therefore reverse the judgment and verdict and remand the case for a new trial.

*Reversed and Remanded for a New Trial.*