# Nellie M. Pressley, Administratrix, Appellee, v. Kinloch= Bloomington Telephone Company et al., Appellants.

1. ELECTRICITY—*who liable for maintenance of wires in proper condition.* *Held,* that it was a question of fact as to who owned and controlled and who was responsible for the maintenance in proper condition of the electric wires which resulted in the injury sued for.

2. APPEALS AND ERRORS—*when judgment unit.* If a judgment in tort is recovered as to two defendants, it is a unit and if it is erroneous as to one of such defendants a reversal will be ordered as to both.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding. Heard in this court at the May term, 1911. Reversed and remanded. Opinion filed October 20, 1911. Rehearing denied December 8, 1911.

SIGMUND LIVINGSTON, WILLIAM R. BACH and LIL-LARD & WILLIAMS, for appellants.

JACOB P. LINDLEY and JOHN E. POLLOCK, for appellee.

MR. PRESIDING JUSTICE PHILBRICK delivered the opinion of the court.

This action is brought by the plaintiff, as administratrix of the estate of her husband, to recover for his death, caused by coming in contact with an electric current of 2200 volts, while trimming a street light for the city of Bloomington on its lighting system. This cause was previously before this court (158 Ill. App. 220) and opinion filed reversing a former judgment. After reinstating the cause, another trial was had which resulted in a judgment for $9000, from which this appeal is prosecuted.

The declaration consists of thirteen counts, and in substance, the charge of negligence against defend-

ants is that the Bloomington and Normal Railway and Light Company owned and operated a system of railways in Bloomington and Normal and operated, in connection therewith, an electric lighting system furnishing current to its customers; that the defendant, Kinloch-Bloomington Telephone Company, owned and operated a telephone system in the city of Bloomington, and that each of said companies owned and controlled their respective wires which were strung upon poles along and upon the streets and alleys of the city of Bloomington. The negligence charged against the Bloomington and Normal Railway and Light Company, hereafter to be designated as the Railway Company, is that it owned and operated a wire upon Prairie street in the city of Bloomington, running north and south, extending past an alley located between Jefferson and Washington streets, that this wire carried a current of 2200 volts and was used for the purpose of supplying customers of that company with current for their lights, and that the railway company was negligent in not protecting the wire with insulation, guards or netting so that other wires lawfully placed upon the streets or alleys of the city of Bloomington could not come in contact therewith and thereby transmit the current to places where other persons might be injured thereby. The negligence charged against the Kinloch Bloomington Telephone Company, which shall hereafter be designated as the Telephone Company, is that it owned, controlled and operated certain wires strung upon poles along an alley extending east and west between Jefferson and Washington streets in the city of Bloomington, that the Telephone Company permitted this wire to become rusty, rotten and decayed so that it broke and fell across the wire alleged to have been owned, controlled and operated by the Railway Company at the point where the wire alleged to belong to the Railway Company extended north and south on Prairie street and

where the telephone wire alleged to extend east and west in this alley above the Railway Company's wire crossed at the junction of Prairie street and this alley. The declaration then avers that by reason of the wire of the Telephone Company falling and the wire of the Railway Company not being guarded and protected, the two wires came in contact and the current was transmitted from the wire owned by the Railway Company to an electric light wire passing north and south along Prairie street and owned by the city of Bloomington and used by it in connection with its lighting system, and was then transmitted to a lamp owned by the city of Bloomington, located at the intersection of Mill and Gridley streets, at which point, deceased while trimming the light, was killed.

When the case was before this court on the former hearing no pleas were on file by defendant except general issue, and this court held that by pleading only general issue the defendant admitted the ownership, control and operation of the wires in question, and it was unnecessary for the plaintiff at that time to prove the ownership, control and operation of these wires. After the cause was reinstated in the Circuit Court, defendants by leave of the court filed special pleas, respectively denying the ownership, control or operation of these wires.

To these pleas plaintiff filed her replication. The second replication to the special plea of the Railway Company, instead of denying the allegations of the special plea of the Railway Company that it did not own, control or operate the wire which it was alleged in the declaration it owned, controlled, and operated, replied that the Railway Company manufactured and generated a current of electricity which it sold and delivered to the Union Gas and Electric Company which owned a lighting system in the city of Bloomington, and that it thereby became the duty of the

Railway Company to see and know that said wire was protected and guarded and to keep and maintain it in proper condition to receive and carry said current without permitting the same to escape. To this replication the defendant Railway Company demurred and as a cause of demurrer insisted that the replication was a departure from the declaration and stated a new and different cause of action. The court overruled the demurrer and the Railway Company elected to abide by its demurrer and assigns as error the overruling of its demurrer. The averments of negligence in the declaration against the Railway Company were that it owned, controlled and operated this line of wire and that by reason of its ownership, control and operation it became its duty to see that it was properly insulated, guarded or protected so that the current of electricity could not escape or be transmitted from that wire to points where other parties might be injured thereby. The plea of the Railway Company denying the charge in the declaration that it owned, controlled and operated the wire, presented an issue as to whether it was its duty to keep and maintain this wire in proper condition, etc., upon the charges made in the declaration. The replication while not confessing or denying the allegations of ownership by the Union Gas & Electric Company in the plea, replied that by reason of the manufacture and sale of the electric current and the delivery of it over this wire under contract with the Union Gas & Electric Company that it thereby became its duty to keep and maintain the wire in such condition that the current of electricity so being conveyed over it could not escape. While this replication did not specifically follow the charge in the declaration as to the reasons or causes creating the duty of the defendant to guard, keep and maintain the wire in question but omitted the question of ownership of the wire and assigned other cir-

cumstances relating to the same wire which created the same duty owed to deceased regarding the same injury, it did not for that reason present or allege a new cause of action but contained additional averments which imposed the same duty upon the Railway Company as alleged in the declaration to guard, keep and maintain the wire in reasonably proper and safe condition. The replication is not a departure from the cause of action originally stated; it does not allege a new cause of action and the demurrer was properly overruled.

The evidence discloses that the defendant Railway Company did not own the wire over which the current was transmitted by the telephone wire to the electric light wire of the city of Bloomington, but that this wire was owned by the Union Gas and Electric Company. It is also disclosed by the evidence that the Railway Company did not use this wire for the purpose of transmitting any current of electricity to its customers, but that persons using the electric current from this wire were customers of the Union Gas and Electric Company and that the Union Gas and Electric Company purchased from the Railway Company the current so generated by the Railway Company and delivered over this wire; that the Railway Company was only the manufacturer of that current; and it is insisted by the Railway Company that by generating, selling and delivering this current it does not become liable for a failure to properly insulate, guard or protect the wires to which it made delivery of the current; that its liability as manufacturer or generator of the current ceased at the point of delivery which was at the power house of the Railway Company where the current was delivered through a meter. On the other hand, it is insisted by the plaintiff that by reason of the manufacture, generating and selling of so dangerous a current of electricity and under an agreement between the Railway Company

and the Union Gas and Electric Company the Railway Company is held liable for the proper and safe condition of the wires by means of which current was conducted and in support of this contention upon the part of the plaintiff is cited the case of Thomas, Administrator v. Maysville, Gas and Electric Company, decided by the Kentucky Court of Appeals when first before that court, in 56 S. W. 153, and on the second hearing in that court in 75 S. W. 1129, wherein that court has held that the manufacturer or generator of an element so dangerous and destructive of human life as a current of electricity consisting of five hundred or more volts is liable for the failure to see that the wires over which it delivers that current are properly insulated and guarded by baskets or netting so that there shall be no reasonable opportunity for the electric current to escape to the damage or injury of other parties. The same doctrine as held by the Court of Appeals of the State of Kentucky has been held to be the rule in the State of New York in the case of Schmeer v. Gas and Light Company, 147 N. Y. 529, wherein illuminating gas was attempted to be delivered by the gas company in a building through pipes which had been placed therein by an independent contractor, and which by reason of the defects thereof escaped to apartments in said building occupied by persons who had not requested to be furnished with it, by reason of which an explosion occurred and damage resulted and the gas company was held liable for the damage. This same doctrine is followed by the court of the State of New Jersey in the case of the Hoboken Land Improvement Company v. United Gas and Electric Company, reported in 58 Atlantic, 1082. Contending that the doctrine laid down by these authorities is not supported by the current weight of authority and is not sound, defendant insists upon the law as laid down by the Supreme Court

of Tennessee in the case of Memphis Consolidated Gas and Electric Company v. Speers, 113 Tenn. 83, wherein that Court declined to follow the rule laid down by the courts of Kentucky, New Jersey and New York. The Court of Appeals of Colorado, in the case of National Fire Insurance Company v. Denver Consolidated Gas Company, 16 Colo. Appeals, 86, follows the rule laid down by the Supreme Court of Tennessee. This rule has also been followed by the Federal Court for the District of Minneapolis in the case of Minneapolis Electric Company v. Cronan, reported in 166 Federal Reporter, 651. The Supreme Court of California, in the case of Abrahams v. California Gunpowder Works, 8 L. R. A. 378, also declined to follow the doctrine of the Courts of Kentucky, New Jersey and New York, and aheres to the rule laid down by the Supreme Court of Tennessee.

The courts of these various states seem to be utterly in conflict upon the rule governing this question, but upon the conditions shown to exist by this record it is unnecessary for us to determine which of these courts has adopted the correct rule, for the reason that in this record the evidence discloses that a corporation known as the Bloomington Electric Light Company entered into a contract with the Union Gas and Electric Company to furnish it an electric current over the wire which is now alleged to belong to the Railway Company and that the Bloomington Electric Light Company was afterwards consolidated with other corporations and that the defendant Railway Company succeeded to all of their properties and to this contract, and that thereafter the Railway Company furnished the current under that contract to the Union Gas and Electric Company and while this contract provides that the Union Gas and Electric Company should keep and maintain its wires over which the current was fur-

nished in good and proper and sufficient condition therefor, this provision, although binding as between the parties to the contract, is not conclusive proof as to other parties as to whose duty it was to keep that wire in proper and safe condition, and the evidence of the former president of the Bloomington Electric Light Company and the superintendent of the Railway Company is that it was the duty of the Railway Company and they were expected to keep and maintain those wires in proper and safe condition. The evidence discloses that the Railway Company did keep and maintain these wires for the transmission of this current, but it is insisted by them that the Union Gas and Electric Company paid them for any work done thereon, and that by reason thereof the Railway Company is relieved from any liability for damage occasioned by reason of these wires not being in proper condition. The evidence in this record presented a question of fact, to be determined from all the evidence in the case, whose duty it was to see that this wire was properly insulated, guarded, protected and kept and maintained in proper condition. It was also a question of fact for the jury to determine whether or not the wire carrying the electric current of 2,200 volts was properly insulated, guarded or protected.

Upon the question as to the liability of the Kinloch-Bloomington Telephone Company, the evidence in this record fails to show that it was the owner of or controlled or operated the line of telephone wire which fell and in falling came in contact with the wire alleged to belong to the Railway Company and the light wire of the city of Bloomington and transmitted the current from the alleged Railway Company's wire to the light wire of the city of Bloomington by means of which it was conducted to the lamp where plaintiff's intestate was killed. The record does not disclose, however, that the telephone wire belonged to and was one of the

wires of the McLean County Telephone Company; this wire was designated as number 5 upon a pole located near the junction of the alley with Prairie street. The McLean County Telephone Company owned other pairs of wires upon this pole and number 5 was one of these wires. There is evidence in the record that that wire extended to and was connected with a cable which entered the telephone exchange of the McLean County Telephone Company which was located a block or more from the telephone exchange of the Kinloch-Bloomington Telephone Company; this wire was upon the top cross-arm of that pole. The Kinloch Bloomington Telephone Company owned wires upon the second cross-arm and these wires extended to and were connected with a cable which entered the telephone exchange of the defendant telephone company.

There being no proof in this record that the defendant Telephone Company owned, controlled, operated or was in any manner responsible for the condition of the telephone wire complained of, the verdict of the jury as to that company is clearly and manifestly against the evidence, and as to it must be reversed. The jury by its verdict, however, found the defendant Railway Company guilty of the charges of negligence alleged against it.    We cannot say, upon this record, that their verdict is unwarranted.   Criticism is made of the instructions to the jury by the court, but upon a careful examination we do not find any prejudicial error in these instructions.   The jury were fairly instructed upon all questions involved in this case, and the instructions which it is alleged were improperly refused contain no propositions which are not properly submitted by the given instructions, and there was no error in refusing the instructions offered.

Plaintiff having elected to sue defendants jointly and having recovered a judgment against both defendants, if it is necessary to reverse the judgment by reason of there being no liability shown as against one

defendant, it is necessary that the judgment shall be reversed as to both defendants.    Jansen v. Varnum, 89 Ill. 100; Chaflin v. Dunne, 129 Ill. 241; Maxwell v. Habel, 92 Ill. App. 510.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*