NELLIE M. PRESSLEY, Admx., Defendant in Error, vs. THE BLOOMINGTON AND NORMAL RAILWAY AND LIGHT COMPANY, Plaintiff in Error.

*Opinion filed February 16, 1916.*

1. PLEADING—*replication making the defendant's duty different from that set out in declaration is a departure.* Where the duty resulting from the facts charged in the declaration is a duty to inspect and repair electric wires, and the duty resulting from the facts set up in the replication is the duty to shut off the current until the company owning and controlling the wires remedies the defect, there is a departure from the cause of action declared on.

2. EVIDENCE—*when evidence should be confined to what was the customary and approved method of construction.* Evidence that the proper construction for safety to prevent electric wires from coming in contact with the wires below is to erect a cradle or wire netting between them is not competent, but the evidence should be confined to what is the customary and approved method.

3. ELECTRIC COMPANIES—*liability of a generating company for negligence of distributing company.* A generating company which sells electric current to a distributing company and furnishes the current over a wire owned by the distributing company is not liable for an injury due to defective insulation of the wire, unless the generating company, with knowledge of the distributing company's negligence in permitting the wire to become defective, continues to supply the current.

4. SAME—*fact that generating company had made repairs upon wires of distributing company does not change rule as to liability.* The fact that the generating company, when requested to do so, had made repairs upon the wires of the distributing company does not change the general rule as to the liability of the generating company for the distributing company's negligence.

5. SPECIAL INTERROGATORIES—*what calls for finding of evidentiary fact as to exercise of due care by an electrician.* An interrogatory submitting to the jury the question whether an electrician was in the exercise of due care for his own safety in failing to use appliances to insulate himself calls for a finding upon an evidentiary fact.

6. INSTRUCTIONS—*instruction as to exercise of due care should consider experience of an electrician.* In an action for damages for the death of an electrician by a shock received while engaged in performing his duties, an instruction as to the degree of care

required of the deceased should embody the element of his experience in the work.

7. SAME—*poor insulation is not to be presumed because injury occurred.* An instruction is proper which states that the jury has no right to assume that the insulation on a wire was defective or improper merely because the deceased was injured by the electric current, but that such charge in the declaration must be proved by proper evidence and cannot be presumed or conjectured.

8. PRACTICE—*interrogatories should be separate from written motion to submit them to the jury.* A written motion to submit certain interrogatories to the jury may be denied if the interrogatories are contained in the motion instead of accompanying it in separate form proper to be submitted to the jury in case the motion should be allowed.

WRIT OF ERROR to the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. COLOSTIN D. MYERS, Judge, presiding.

LIVINGSTON & BACH, (SIGMUND LIVINGSTON, of counsel,) for plaintiff in error.

ROBERT P. LINDLEY, and BARRY & MORRISSEY, for defendant in error.

Mr. JUSTICE COOKE delivered the opinion of the court:

John W. Pressley, an employee of the city of Bloomington, was killed on October 26, 1907, while trimming a street lamp, his death resulting from a shock received from an electric current passing over the wires with which the lamp was connected. The lamp was a part of the lighting system owned by the city of Bloomington. No electric current was being generated by the city's plant at the time of the accident, but the current which caused the death of Pressley was transmitted to the city's wires by the falling of a telephone wire across the city's wires and a 2200-volt wire owned by the Union Gas and Electric Company of

Bloomington. Defendant in error, Nellie M. Pressley, as administratrix of the estate of the deceased, brought suit in the circuit court of McLean county against the Kinloch-Bloomington Telephone Company to recover for the death of her intestate, on the theory that the telephone company was the owner of the wire which fell and made the connection between the wire of the Union Gas and Electric Company and the city's wires. Afterwards, plaintiff in error, the Bloomington and Normal Railway and Light Company, was made a defendant. The case has been tried four times in the circuit court, each trial resulting in a judgment for defendant in error. The first three judgments were reversed by the Appellate Court for the Third District. After the last reversal the case was dismissed as to the Kinloch-Bloomington Telephone Company, leaving plaintiff in error as the sole defendant. On the last trial judgment was rendered against plaintiff in error for $4187, which was affirmed by the Appellate Court. The judgment of the Appellate Court is brought here for review upon writ of *certiorari*.

After plaintiff in error was made a defendant the declaration was amended, charging both it and the telephone company with negligence. It was charged that the 2200-volt wire across which the telephone wire fell was owned and controlled by plaintiff in error, that the insulation on said wire was old, worn and ragged, and that plaintiff in error was negligent in failing to erect and maintain netting or cradles between the telephone wire and the 2200-volt wire. Various pleas were filed. Plaintiff in error by its second additional plea averred that the 2200-volt wire was not owned, maintained or operated by it but by the Union Gas and Electric Company. To this plea the defendant in error filed her second additional replication, charging that plaintiff in error was engaged in the manufacture and sale of electric current which it sold and delivered to the Union Gas and Electric Company over and upon the 2200-volt

wire, and that plaintiff in error negligently failed properly to care for and guard this highly charged wire against the breaking and falling of other wires and the consequent connection with the city's wires. To this replication plaintiff in error filed a demurrer, which was overruled, and it elected to stand by its demurrer. To this plea defendant in error also filed its third additional replication, charging that the 2200-volt wire was used and controlled by plaintiff in error and was dangerous to persons trimming the city's lamps, and that plaintiff in error transmitted a dangerous electric current from its power house to residences and business houses in Bloomington over this wire. The plaintiff in error filed a rejoinder to this replication, in which it alleged that the current manufactured by it was not delivered to the consumers and users thereof at the houses, business places and residences in said city over this wire but that such current was delivered to the Union Gas and Electric Company at plaintiff in error's generating plant, and that the Union Gas and Electric Company delivered the same to its customers.

The court erred in overruling the demurrer to the replication to plaintiff in error's second additional plea. We have set out the only negligence charged in the declaration against plaintiff in error. This replication states a new and different cause of action than that declared on and a different duty results from the facts therein charged. The declaration charged that plaintiff in error owned, maintained and operated the wire, and that it was negligent in failing to construct it properly and in failing to keep it properly insulated. By this replication it is charged that plaintiff in error sold and delivered electric current to the gas company over this wire and that it negligently failed to care for and guard the wire. The duty resulting from the facts charged in the declaration is the duty to inspect and repair the wire, while the duty resulting from the facts set up in the replication is, as hereinafter clearly shown, the

271 — 40

duty to shut off the current until the gas company should remedy the defect. This was clearly a departure from the cause of action declared on. Defendant in error cannot by her replication set up and rely upon another cause of action for a recovery. *McConnel* v. *Kibbe,* 29 Ill. 483.

At the close of the evidence on the part of defendant in error, and again at the close of all the evidence, the plaintiff in error asked the court to direct a verdict of not guilty. The refusal of the court to so direct a verdict is assigned as error. The negligence with which plaintiff in error is charged in the declaration is, that the insulation of the 2200-volt wire had become old, worn and ragged and was permitted to remain in that condition, and that it failed to erect and maintain netting or cradles between the 2200-volt wire and the uninsulated wires passing over it. There is no proof whatever in the record that the insulation of the 2200-volt wire was imperfect where the telephone wire fell across it. On the question of the failure to erect and maintain a netting or cradle where other wires passed over the 2200-volt wire, defendant in error produced a number of witnesses who were permitted to testify, over the objection of plaintiff in error, that the proper construction for safety to prevent wires erected over wires heavily charged with electricity from coming in contact with the wires below was to erect a cradle or wire netting between them. The objections interposed to interrogatories along this line were based on the ground that the inquiry should be as to the customary and approved method of construction. The court erred in overruling these objections and in permitting the various witnesses to testify as to the proper method of construction. Each of these witnesses testified, upon cross-examination, that it was not the customary or approved method to erect cradles or wire netting over an insulated wire charged with 2200 volts to protect it from uninsulated harmless wires erected above it. Defendant in error failed to prove by any competent evidence her allegation that the

2200-volt wire had been negligently constructed. On the contrary, all the competent testimony on this subject was to the effect that the wire was constructed in the customary and approved method. The peremptory instruction should have been given.

Plaintiff in error insists that inasmuch as the uncontradicted proof shows that it did not own or maintain the 2200-volt wire but simply sold and delivered electric current to the Union Gas and Electric Company to be transmitted over this wire, in no event can it be held to be liable even though it be shown that said wire was defective in the respects charged in the declaration. While this question is eliminated from the case as presented by the record now before us by reason of the fact that there is no evidence tending to prove the negligence charged in the declaration against the plaintiff in error, inasmuch as the judgments of the Appellate and circuit courts must be reversed for the errors above indicated and the cause remanded, the question may become important on another trial under the issue presented by the third additional replication to the second additional plea and the rejoinder thereto. In support of this contention plaintiff in error relies upon the following uncontradicted facts proven on the trial of the case:

Plaintiff in error is engaged in the business of generating electric current. The Union Gas and Electric Company has a franchise from the city of Bloomington granting it the right to use the streets of that city for the purpose of distributing electric current. The Union Gas and Electric Company owned the 2200-volt wire across which the telephone wire fell, forming the connection with the wires of the city. Plaintiff in error sold electric current to the Union Gas and Electric Company, which was delivered to it upon this wire at the plant of plaintiff in error. Such current was measured by two meters,—one on the inside of the plant belonging to plaintiff in error, and the other just outside the plant where the current was delivered, belong-

ing to the gas company. Plaintiff in error was paid by the gas company for the current so furnished and had no control over the current after it was delivered to the gas company, except that it could stop the same entirely by switching the current off the gas company's wire.

The question presented is whether a generating company which sells electricity to a distributing company to be carried over the wires of the latter and delivers the current at its plant to such distributing company, is liable, under such circumstances, for injuries resulting from the escape of the current from the wires of the distributing company. This precise question has never been determined in this State and has been passed upon by the courts of but few of the other States of the Union. The pioneer case seems to be that of *Thomas' Admr.* v. *Maysville Gas Co.* 108 Ky. 224, where it was held that a corporation which generates and sends electricity into the wires of a street railway company is chargeable with the duty to see that such wires are properly insulated, and it, as well as the street railway company, is liable for failure to perform that duty if a person is killed because the wires are not properly insulated. The conclusion reached in that case by a divided court is based upon the ground that the rules which apply to the sale and delivery of other commodities do not apply to electricity because of its well known dangerous character, and that an electric current could not be delivered from the generating company to the street railway company and placed in the possession and under the control of the latter. It was there held that from the very nature of electricity the control of the current remains with the generating company. This decision has been followed and approved by the Kentucky court in later cases.

In *Fickeisen* v. *Wheeling Electrical Co.* 67 W. Va. 335, and in *Perry* v. *Ohio Valley Electric Railway Co.* 72 id. 282, the Supreme Court of Appeals of West Virginia took the contrary view. In the *Fickeisen case* the Wheel-

ing Electrical Company of Wheeling, West Virginia, sold electric current to the Bridgeport Electrical Company of Bridgeport, Ohio, to be used by it in lighting the streets of Bridgeport, delivering the electric current from the wire of the Wheeling company to the wire of the Bridgeport company at a point where the wires of the two companies met at a bridge across the Ohio river. A wire of the Bridgeport company conveying the electric current along a street in Bridgeport became grounded and killed Fickeisen's intestate. The court held that the Wheeling company was not liable. The basis of the holding in the *Fickeisen case* is directly contrary to that in the *Thomas case, supra.* In the *Fickeisen case* the West Virginia court held that the delivery of the electric current was actually made at the bridge end where the wires of the Wheeling company ended and those of the Bridgeport company began; that the control of the Wheeling company there ceased and that of the Bridgeport company began, and that from that point the wires of the Bridgeport company constituted the vehicle for the conveyance of the current as the property of the latter company. The West Virginia court followed and approved the *Fickeisen case* in *Perry* v. *Ohio Valley Electric Railway Co. supra.*

The same question was also decided in *Hoffman* v. *Leavenworth Light, Heat and Power Co.* 91 Kan. 450. In that case a minor son of Hoffman died as the result of an electric shock received by touching a windlass attached to an electric light pole situated on the Fort Leavenworth military reservation. The light company furnished the electric current for lighting the reservation, the poles, wires and appliances being owned and controlled by the government. The light company under its contract was also required to maintain the arc lamps. From one of the wires on the pole where the injury occurred the insulation had worn off, the wire had become looped over an iron step at the side of the pole, and the chain of the windlass had come in con-

tact with this step and had become charged with electricity. In determining the question of the liability of the light company the Kansas court exhaustively reviewed the cases having any bearing on the question, including the *Thomas case, supra,* and the *Fickeisen case, supra,* and in deciding that the light company was not liable for the injury, said: "The question of the defendant's liability is a new one in this State and must be decided in accordance with established principles. Two of these principles are, that one shall so use his own as not to injure another, and that the law demands only what is reasonable, under the circumstances, to avert such injury. The furnishing of electric current to distant places is a necessity of modern civic and industrial life, but it is in strict line with the dictates, alike, of law, morals and humanitarianism that one who generates and sells this dangerous agency should use proper care to avoid resulting harm. When such power is simply furnished to a responsible party for use in a system of poles, wires and appliances owned and controlled by such party and in proper condition to receive the current safely, the furnishing party is not required to maintain inspection or to see at its peril that such equipment is kept safe, but so long as not chargeable with knowledge of defect therein it may justly and reasonably assume that such safety will be maintained,—justly and reasonably because the using company is presumed to act in accordance with prudence and safety until the contrary appears. The fact that in furnishing such power for arc lighting the seller undertakes to supply and maintain the necessary lamps and carbons does not change the rule, for such party has the same right as before to assume that the purchaser will act with due care. In order, therefore, to hold the seller liable it must appear that it continued to furnish and turn on the dangerous current after knowing that the purchaser had permitted the equipment to become defective. From the time of acquiring such knowledge the seller's contract duty cannot be re-

quired save on condition that such defect be remedied, for otherwise it must thenceforward furnish a dangerous force, knowing that life and limb may be imperiled by reason of such defect, which neither a contract nor the law nor the common instincts of humanity could require of anyone."

We agree with the conclusion reached in the *Fickeisen case, supra,* as the same is modified by *Hoffman* v. *Leavenworth Light, Heat and Power Co. supra.* While account must be taken of the well known dangerous character of electricity, a generating company should not be held liable for every injury resulting from the negligence of a responsible distributing company to whom it sells and delivers electric current.

The evidence in this record does not tend to establish the fact that plaintiff in error used or controlled the wire in question. The fact that plaintiff in error, when requested by the gas company to do so, had made repairs upon the wires of the gas company does not alter the case. This same situation was present in the *Fickeisen case,* and we concur in the conclusion there reached that it does not affect the question of liability of the generating company.

Whether defendant in error's intestate was guilty of contributory negligence under the circumstances was a question of fact for the jury. The city maintained its own plant for street lighting. Electricity was generated at this plant only in the night time and during the day no current was generated or distributed over the city's wires. Pressley was employed by the city, and was engaged, at the time of his death, in trimming the street lamps. He was doing this work in the daytime and at a time when the city's plant was not generating electric current. Whether, under these circumstances, it was incumbent upon Pressley to take all the usual precautions customary to be taken by men engaged in doing work about live electric wires was a question for the jury to determine under proper instructions from the court.

Immediately prior to the last trial the case was dismissed as to the Kinloch-Bloomington Telephone Company. The declaration in each count alleged that the telephone wire which fell was owned, maintained and controlled by the Kinloch-Bloomington Telephone Company and was used by it as a part of its telephone·system, and this averment remained in the declaration, without any change, after the case was dismissed as to the telephone company. The undisputed evidence shows that this wire was not owned by the Kinloch-Bloomington Telephone Company, and it is contended that this constitutes a fatal variance between the declaration and the proof. If plaintiff in error was guilty of the negligence charged against it in the declaration it is immaterial to whom the wire belonged which fell across the 2200-volt wire, and plaintiff in error would be liable without regard to whether the negligence of another company contributed to the injury complained of. This did not constitute a fatal variance. *Postal Telegraph-Cable Co.* v. *Likes,* 225 Ill. 249.

Plaintiff in error complains of the court's refusal to submit to the jury three special interrogatories. The request was made in the form of a written motion which contained the interrogatories but which was not accompanied by the interrogatories in separate form proper to be submitted to the jury in case the motion should be allowed. The failure to thus present the interrogatories to the court was sufficient ground to warrant the denial of the motion. The motion was properly denied, however, for the reason that the interrogatories were improper. Each of these interrogatories asked for findings as to evidentiary facts. Had the jury by the first interrogatory been requested to find, simply, whether Pressley was in the exercise of due care and caution for his own safety at the time of his injury and death it would have been proper as calling for a finding of an ultimate fact. To request that they find whether he was in the exercise of due care and caution in

failing to use appliances to insulate himself is calling for a finding upon an evidentiary fact. The second and third interrogatories are so plainly requests for findings of evidentiary facts, and not of ultimate facts, that it is unnecessary to discuss them.

Complaint is made of the action of the court in giving four instructions asked on behalf of defendant in error and in refusing to give twenty instructions asked on behalf of plaintiff in error. The court erred in giving three of the instructions complained of on behalf of defendant in error and in refusing to give three asked on behalf of plaintiff in error.

The first given instruction states that if plaintiff in error manufactured electric current and delivered the same to the Union Gas and Electric Company at plaintiff in error's plant and such current was delivered to the customers of the Union Gas and Electric Company, and if plaintiff in error failed, under the circumstances, to safeguard and protect the said wire from communicating such current to the city's wires and by reason thereof plaintiff's intestate was killed, then plaintiff in error is liable. For reasons heretofore given it was erroneous to give this instruction. For the same reason the third given instruction was erroneous.

The sixth given instruction told the jury that the care required of Pressley was such as a reasonably prudent person would exercise. It is complained that this instruction disregards entirely Pressley's experience in electrical work and his special knowledge of the dangers incident thereto. The instruction should have stated that the care required of Pressley was such as a reasonably prudent person of like experience would exercise, and it was error to give it in the form in which it was asked.

The first refused instruction stated that plaintiff in error was not an insurer of the safety of wires nor of the public against accidents, and if they believed the death of

Pressley was the result of an accident which could not have been foreseen by plaintiff in error they should find it not guilty. The eighth refused instruction stated that if Pressley was experienced in the business in which he was engaged at the time of his death and was acquainted with and realized the dangerous properties of electricity, then he was chargeable with a higher degree of care and caution for his own safety than one not acquainted with the dangerous properties of electricity. The twenty-fifth refused instruction stated that the jury had no right to assume that the insulation on the 2200-volt wire was defective or improper merely because Pressley was injured by the electric current, and that this charge in the declaration must be proven by proper evidence and cannot be presumed or conjectured. These instructions were proper and should have been given.

We do not deem it necessary to enter into a detailed discussion of the other instructions given and refused which are complained of. Although an unusual number of instructions were asked, we have carefully considered each of those concerning which complaint has been made, and, aside from the instances above pointed out, we find no error in the action of the court in giving and refusing instructions.

Because of the error in overruling plaintiff in error's demurrer to the replication to its second additional plea and for the failure of the court to give the peremptory instruction, the judgment of the Appellate Court and the judgment of the circuit court are reversed and the cause is remanded to the circuit court.   *Reversed and remanded.*