### MINNESOTA ELECTRIC LIGHT & POWER CO. v. HOOVER.

No. 13276—Opinion Filed Sept. 16, 1924.

(Syllabus.)

1. **Electricity—Duty of Power Company to Inspect Wires and Appliances Owned by Consumer.**

Where an electric power company furnishes current to a refining company through wires and appliances constructed and owned by the refining company, there is no duty of continuing inspection upon the electric company to see that such wires and appliances are at all times in safe condition to receive such current.

2. **Same.**

When electric power is simply furnished by a power company for use in a system of poles, wires, and appliances owned and controlled by the purchaser of powers, the company so furnishing the power is not required to maintain inspection or to see at its peril that such equipment is kept safe, but so long as not chargeable with some defect therein, it may assume that such safety will be maintained.

3. **Same—Master and Servant—Duty of Consumer for Safety of Employes.**

A refining company which has constructed a system of wires, poles, and appliances upon its premises to receive and transmit electric current and has connected such system with the wires of a power company and takes the electric current therefrom through its own system of wires and appliances, owes to its employes the duty of inspecting such wires and appliances so that injury may not occur to such employes when properly coming in contact therewith, but no such duty is owed to such employe by the furnisher of such power.

4. **Same—Action by Consumer's Servant Against Power Company for Injuries —Erroneous Instruction.**

Where a refining company has constructed its system of wires and poles to transmit electric current upon and through its buildings and premises and has connected its wires with those of a power company furnishing electric current and thus used electric current upon its premises through its own appliances and after a considerable lapse of time one of the employes of said refining company was injured by coming in contact with one of such wires from which insulation had worn off, it was error for the trial court in a suit by such employe against the power company to instruct the jury in effect that it was the duty of the power company to use ordinary care to see that its current was delivered into reasonably safe wires and appliances.

5. **Same—Basis of Liability.**

In such a case, the ownership or control of the wires and appliances is the test of the duty, and where there is a conflict in the evidence as to such ownership or control the question is one for the jury. The liability of the power company, if any, must be predicated upon its knowledge of the defective condition in case of wires or appliances not owned, nor installed nor controlled by it.

Error from District Court, Oklahoma County; James I. Phelps, Judge.

Action by R. N. Hoover, a minor, by his brother and next friend, F. E. Hoover, against the Minnesota Electric Light & Power Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Breck Moss and R. L. Stephens, for plaintiff in error.

Rittenhouse & Rittenhouse, for defendant in error.

GORDON, J. The parties will be referred to herein as they were in the trial court. Plaintiff filed his petition herein in the district court of Oklahoma county, against the Minnesota Electric Light & Power Company, alleging that the defendant was, at the times mentioned therein, operating an electric light and power plant in the city of Cushing in Payne county, Okla., and transmitting its high power current of electricity by means of poles and wires throughout said city and over and upon the property of its consumers in said city.

That on or about the 1st day of October, 1920, the Inland Refining Company, of Cushing, was a consumer and patron of defend-

ant, and the defendant had, prior to said date, wired the refinery of said Inland Refining Company, and constructed and maintained a high power line from the east of said refinery over and upon the premises of same, connecting with the different departments of said refinery, and was furnishing by this means electric light and power to said refinery. That immediately east of the boiler house of said refinery, defendant had erected a pole to which was attached defendant's high power line, which carried a large voltage of electricity, and upon which was located a transformer; that the wires through which defendant transmitted electricity to said Inland Company, where the same were fastened to said pole and transformer, were not properly maintained and insulated by said defendant, and the wire containing such current was exposed, rendering it dangerous to such persons as might come in contact therewith. That it was the duty of defendant to properly insulate and maintain said wires so that the same would not injure persons coming in contact therewith, but the defendant wholly neglected this duty and allowed its wires on said pole to become uninsulated and exposed so as to be dangerous to any person coming in contact therewith.

That on the 1st day of October, 1920, plaintiff was in the employ of said Inland Refining Company, and while working on the installation of a steel tank near the boiler house of said refinery, a few feet from said pole, it became necessary that he scale said tank and loosen a certain guy rope used in its installation.

That while there engaged, without negligence on his part, he came in contact with the wires of defendant connecting the said pole, which said wires had been negligently maintained uninsulated by the defendant and which were charged with a dangerous current of electricity, and by reason of his contact with said wires he received a shock causing him serious bodily injuries as set out in detail; that his injuries were caused by defendant's negligence by allowing said wires to be and remain in an unsafe condition, as above set out. He prays judgment for his damages by reason of such injuries.

After certain preliminary pleadings, defendant filed its answer, pleading, first, a general denial; second, contributory negligence; third, that the system of poles and wiring upon the premises of the Inland Refining Company had been erected by that company; that having erected and provided such system upon its own premises, said Inland Refining Company applied to defend-

ant for permission to attach its wires to defendant's high power wires running along the east side of the premises of said Inland Company, and with the consent of defendant did attach its wires to those of defendant and did procure of defendant the delivery of a current of electricity from the lines of defendant to those of said Inland Company for the purpose of lighting its plant and buildings. Defendant says it had no control or supervision over the electrical equipment of said Inland Company, but that said Inland Company had complete control and supervision of the wiring system which it had so erected upon its premises. It prays to be discharged with its costs.

To this plaintiff replied, first, by denial of the new matter in the answer; second, alleging that defendant was in exclusive control of the wires upon the premises of the Inland Company and that under the rules and customs of defendant and under its contract with said Inland Company, defendant was excluding said Inland Company and all other persons from repairing or in any manner interfering with the lines upon the premises of said Inland Company. Upon these pleadings, the cause went to trial before a jury. Plaintiff proved his election to sue defendant instead of accepting compensation from the Inland Company, as provided by law. There was verdict and judgment for plaintiff, motion for new trial by defendant overruled, and the cause is here upon appeal from such judgment.

The sole question here is whether the Minnesota Electric Light & Power Company owed to an employe of the Inland Refining Company the duty of inspecting the wires in question, or whether that duty was owed by the Inland Refining Company.

In its brief, defendant confines itself to a discussion of the alleged errors by the trial court in overruling defendant's demurrer to plaintiff's evidence; in overruling defendant's motion for a directed verdict at the close of all the evidence, and in the refusal of the court to give the instructions requested by the defendant and in the instructions given by the court.

The instructions requested by defendant which the court refused to give and to which refusal defendant excepted, are as follows:

"(1) You are instructed that where an electric light company furnishes current to any individual or corporation, delivering same into wires and equipment owned and installed by such purchaser, the electric light company is not liable to a third person re-

ceiving injuries from said current by reason of defective insulation or other defect in the wire or equipment of the purchaser, said electric light company so furnishing current being under no legal duty to such third person to inspect said equipment before delivering its current into the wires and equipment of the purchaser. In this connection you will determine from the evidence whether the Minnesota Electric Light & Power Company, defendant herein, owned or installed the high power wire on the premises of the Inland Refining Company where said injury to the plaintiff was alleged to have occurred. If you should determine from the evidence that said defendant neither owned nor installed said equipment, it would then become your duty to return a verdict herein for the defendant."

"(2) You are instructed that where an electric light company furnishes current to any individual or corporation and delivers same into wires and equipment of such purchaser, the electric light company furnishing such current is not under a legal duty to third persons in the employ of said purchasing company, or otherwise, to make an inspection of said wires or equipment for the purpose of ascertaining whether the same is properly installed or insulated before delivering its current into said wires of the purchasing company, and would not be liable to such third person injured by said current as a result of defective insulation or other defect in said wires and equipment; and if you should find from the evidence that the defendant neither owned nor installed the high power line on the premises of the Inland Refining Company, on which the plaintiff is alleged to have been injured in this case, your verdict should be for the defendant."

The instruction given by the court touching the matters involved in these requested instructions is as follows:

"(11) You are further instructed that where an electric light company furnishes current to an individual or a corporation, delivering same through wires, and equipment owned and installed by the purchaser, said company is required to exercise ordinary care and caution to see that the current which it delivers is delivered into reasonably safe wires and appliances, and this is particularly true where the current delivered is of a high voltage, and dangerous to those who may come in contact therewith, and in this connection you are instructed that if you find and believe from a preponderance of the evidence in this case that the current of electricity in question was of a high voltage and dangerous in its character and that defendant delivered the same into wires through which it was conveyed, and that they carelessly and negligently delivered the said electric current into improper and unsafe wires and appliances and that without negligence on the part of the plaintiff himself he came in contact with such

wires and received the injuries complained of, then defendant would be liable in damages for such injuries whether the wires in question were owned and controlled by defendant or whether they were owned by some other individual or corporation."

The question presented by these instructions and requested instructions is an interesting one, and now comes squarely to this court for the first time. This question is, whether an electric power company engaged in the manufacture of electric power and its sale to consumers shall be held liable for damages resulting from an injury to person or property by reason of contact with a wire or appliance erected, installed, and owned by the consumer, into which wire or appliance the power company is sending electric current at the instance of the consumer.

In the petition in this case, the allegation is that defendant, the Power Company, had wired the premises on which plaintiff was injured, in order to furnish these premises with light and power, and had constructed, maintained, and operated these wires and was so doing on the date of the injury; that the wires were not properly insulated and that defendant owed to plaintiff the duty to properly maintain and insulate these wires, but failed in this respect.

Defendant in its answer denied these allegations and alleged that the wiring of these premises was done by the Inland Refining Company, and that it attached its private wires to those of the defendant to obtain power. The answer alleged, further, that defendant had no control or supervision over these wires, but that the Inland Company had complete control and ownership thereof. In his reply plaintiff, in addition to the denial of the new matter in the answer, alleged that the wires in question were under the exclusive control of the defendant, whose duty it was to keep them in repair and insulated, and that defendant excluded said Inland Company and all others from repairing and interfering with said wires.

It is evident, therefore, that plaintiff was relying for recovery upon the ownership of the wires by defendant and upon defendant's supervising control over their repair and insulation. Upon the conclusion of the evidence, however, plaintiff requested the court to instruct the jury, in effect, that if they believed defendant used the wire line upon which plaintiff was injured for the purpose of transmitting its high power current of electricity and that plaintiff was injured by coming in contact with the wire,

thereby receiving a shock and injury, they should find for the plaintiff, irrespective of the question of ownership of the wire over which the current was transported. This instruction the trial court refused. The defendant, on the other hand, requested instructions to the effect that if the wires and equipment claimed to be defective were owned and installed by the Inland Company, the defendant was under no duty to inspect or repair. These requests were refused by the court, and the court of its own motion instructed the jury as above stated.

It will be seen that there are two contradictory theories here: one, that of the generator of electric power sends a powerful current through any defective wire or appliance, whether owned, installed, or controlled by it or not, such generator is liable to a person injured by reason of such defective wire or appliance. The other theory is that the generator of such power is governed by the general principle controlling negligence actions, and that where a consumer takes the electric current through wires and appliances installed, owned, and maintained by such consumer, there is no liability against the generator of the current by reason of injury to person or property resulting from a defect in such privately owned wires or appliances. But that the liability, if any, is against the person owning and maintaining such wires and appliances.

In this case the trial court took the first named theory. The question of the ownership and the resultant duty of inspection of these wires upon which plaintiff was injured was sharply contested in this case, and therefore the instruction of the court discloses the conclusion in the mind of the court that it was immaterial which party installed the system of wires and appliances upon the premises of the Inland Refining Company, the Electric Company being held to the duty of inspection in any event.

In order to hold the defendant liable here it must be shown, first, that the defendant owed the plaintiff a duty to inspect the wires and appliances upon the premises of the Inland Refining Company and to use ordinary care to see that they were at all times in such condition that a person coming in contact therewith should not be injured thereby; second, that defendant failed to perform such duty; third, that plaintiff was injured by such failure. Missouri, K. & T. Ry. Co. v. Wolf, 76 Okla. 195, 184 Pac. 765.

There are numerous authorities upon the questions involved here coming from the courts of other states and from the federal courts, and this court must either reconcile these decisions or adopt that rule which appears supported by the weight of authority and by reason. The general rule deduced from these decisions is found in Corpus Juris. vol. 20, p. 364, et seq.:

"Where wiring or other electrical appliances on private premises are owned and controlled by the owner or occupant of such premises, a company which merely furnishes electricity is not responsible for the insulation or condition of such wiring or appliances and is not liable for injuries caused by their defective condition, to such owner or occupant, or to third persons on such premises. A like rule has been applied to the poles and wires of a distributing company to which a generating company sells and delivers electricity for distribution and sale to the patrons of the distributing company. The fact that the injury occurred on a street or highway does not alter the rule. The duty and responsibility of a mere generating company is limited to making a proper connection and delivering the electric current to the purchaser's wires and appliances in a manner which, so far as such delivery is concerned, protects life and property, and there is no duty of inspection to see that the purchaser's wires and appliances are in a safe condition and kept so. While the weight of authority supports the foregoing rules, there are cases holding that it is the duty of a mere generator or seller of electricity to see that the wires and appliances of the customer are in proper condition safely to receive it, and that such duty extends to all wiring and apparatus upon streets, highways, and places where persons may be expected to be, although not the property of the supplier of the current, except that no such duty is owed to patrons who own and control electrical fixtures upon their own private property, a distinction being drawn between injuries to third persons as to whom there is a duty to exercise care, and injuries to a consumer who owns and controls the defective wires and appliances as to whom no duty of inspection exists."

In the brief of defendant in error, attention is called to the following language in the same paragraph and on page 366:

"Where an injury results from negligence of an electric company, it is immaterial that the wire or appliance which carried the electric current was not within its ownership or control."

An examination of this language, in connection with the remainder of the context and of the cases supporting it, makes it evident that it was not intended to vary or qualify the general principles already set out in the paragraph. In the first place, the negligence specified must be something other than failure to inspect and properly main-

tain, as such failure would, under the context, not constitute negligence in a case of privately owned wire. The language is explained in the supporting case of Burnett et ux. v. Fort Worth Light & Power Co. (Tex.) 117 S. W. 175. The third paragraph of the syllabus in that case is as follows:

"Where injury was caused by a guy wire which would have been harmless had it not been charged with electricity from defendants' fault in failing to observe ordinances under which they were exercising their franchises in the city, it was immaterial as affecting their liability whether the guy wire was owned or controlled by them or either of them."

It will be noted that the electric company was negligent in allowing its current to escape from its wire and enter into the guy wire in violation of the city ordinance. Inspection of its own wires and appliances would have prevented this condition.

Passing from the general text as above quoted, we find among the leading cases upon this question that of Hill v. Pacific Gas & Electric Co. (Cal.) 136 Pac. 492. In this case the Bucket-Gravel Mining Company employed in its operation electric current furnished by Pacific Gas & Electric Company; the mining company furnished all its wires and appliances and maintained the same. An employe of the mining company was killed by the electric current which had passed into the wires and appliances of the mining company. The court held that there was no duty of inspection of the wires or appliances upon the electric company. In the course of the opinion, on page 494, the court say:

"But the electricity which caused the injury was not, at the time and place of the injury, under the management or control of the electric company, nor were any of the appliances by which the electricity was being utilized under its management or control, nor was it in any degree responsible for any failure of these appliances to perform their offices. No causal connection of the electric company, at the time of the accident, with the thing which caused the injury, was shown. It is a matter of common knowledge that electric power companies supply electricity to corporations and persons engaged in lighting cities, in operating street cars, and in furnishing individuals with light and power. Among these lines of transmission hundreds and thousands of persons are furnished light, heat and power in connection with the multifarious industrial enterprises in which our people are engaged. Plaintiff's contention is that, because of the extremely dangerous character of this element brought into use by these electric power companies, they should be compelled not only to superintend the installation of all appliances constructed to receive and utilize this dangerous element, but should be charged with such inspection from time to time of all such appliances as would relieve the power companies from the charge of want of care and would enable them at all times to explain that any accident which might happen through its use was not the result of want of care on their part. When we consider the multitudinous uses to which electricity is now being applied, and assuming that the user receives it by means of appliances of his own choice, erected by himself and under his own control and management, as in the present case, it would be an intolerable burden to require of the power companies what is here contended for. The rule invoked was never intended to apply to such a case."

And further, on pages 494 and 495:

"Appellant cites a long array of cases in support of his contention, but with the exception of a single case—Thomas v. Maysville Gas Co., 108 Ky. 224, 56 S. W. 153, 53 L. R. A. 147—it will be seen that there was some sort of control by the defendant, either in the construction of the appliances or in operating them. With commendable candor plaintiff does not conceal the fact that the cases cited by him recognize the distinction we have pointed out. The cases are numerous holding to the view we have indicated, and in some of them the doctrine of the Kentucky case is distinctly disapproved. We make reference to some of those cases."

The various decisions of the different states are then reviewed, and it is shown that they do not conflict with the decision in this case with the exception of the case of Thomas v. Maysville Gas Company, 108 Ky. 224, 56 S. W. 153, 53 L. R. A. 147.

In the case of Fickeisen v. Wheeling Electrical Co., 67 W. Va. 335, 27 L. R. A. (N. S.) 893, the syllabus is:

"The Wheeling Electrical Company sold electricity to the Bridgeport Electrical Company, to be used by the latter company in lighting the streets of Bridgeport, delivering the electricity from the wire of the Wheeling Company to the wire of the Bridgeport Company, at a point where the wires of the two companies met. A wire of the Bridgeport Company conveying the electricity along a street was grounded, and killed a person with its current. The Wheeling Company is not liable to an action for the death of such person."

Here the sale was to a distributing company and the court held that electricity was a subject of sale; that where the distributing company took the current into its own wires and appliances, that company, and not

the seller of the current, became liable to any person injured by reason of any defect in such wires or appliances. This case again reviews the authorities and finds the weight of authority in favor of the doctrines therein enunciated. It holds the decision in the Kentucky case, Thomas v. Maysville Gas Company, to be illogical and against the weight of authority. In support of this opinion cases are cited from California, Michigan, Tennessee, Colorado, Rhode Island, Iowa and Virginia.

Defendant in error seeks to invoke a different rule as to private purchasers of current, but the same reasoning applies. Memphis Consolidated Gas & Electric Co. v. Speers, 113 Tenn. 83, 81 S. W. 595.

In National Fire Insurance Co. v. Denver Consolidated Electric Co. (Colo.) 63 Pac. 949, the Union Depot Company had its building wired for electricity by its own employes. The electric company furnished current for lighting through these wires. The court say, at pages 949 and 950:

"Whatever, therefore, may have been the character of the wiring or the nature of the work it was a matter with which the electric light company was not chargeable. If it was negligently done, the negligence was the negligence of the depot company which put it in. * * * There was a total absence of evidence which sustained or which tended to sustain any knowledge on the part of the electric light company of the character of the wiring."

And on page 951:

"Where parties undertake to wire their own property and then apply to a light company to deliver a current to light the building, they must be assumed to take all risks resulting from the character of the wire which is put in the building and the method of construction which is adopted in putting it in."

The case of Princeton Light & Power Co. v. Ballard (Ind. App. Ct.) 109 N. E. 405, supports the general doctrine that there is no duty of inspection of private wires upon the seller of electric current. Section 2 of the syllabus in that case is as follows:

"Where the evidence was conflicting as to the ownership and control of electric wires by which plaintiff was injured, it was error to refuse an instruction requested by defendant that if such wires were the property of plaintiff's employer, and in its charge. plaintiff could not recover against the furnisher of the electricity, where there were no other instructions covering the same proposition, and the court had given instructions diametrically opposite thereto, covering plaintiff's theory of the case."

In Drury v. East St. Louis Light, etc., Co., 194 Ill. App. 121, the third paragraph of the syllabus is as follows:

"An electric lighting and power company, which is engaged in the business of supplying light and power to buildings in a city, and, in pursuance of its contract, has connected its wires with wires that have been placed on a building by another person, owes no duty to the owner of the building to investigate and inspect the work of such other person, so as to make it liable for injuries sustained by another person as a result of the faulty construction of such other contractor."

See, also, the Law of Electricity, Curtis, page 618; 9 R. C. L. page 1204, section 15. Minneapolis General Electric Company v. Cronin, 166 Fed. 651, 20 L. R. A. (N. S.) 816, follows the same rule and criticises the rule as announced in Kentucky.

The Supreme Court of Kansas has passed upon this question in Hoffman et al. v. Leavenworth Light, Heat & Power Co., 91 Kan. 450, 138 Pac. 632, 50 L. R. A. (N. S.) 574. In that case, the second section of the syllabus is as follows:

"When such power is simply furnished to a responsible party for use in a system of poles, wires, and appliances owned and controlled by such party and in proper condition to receive the current safely, the furnishing party is not required to maintain inspection, or to see at its peril that such equipment is kept safe, but so long as not chargeable with knowledge of some defect therein it may assume that such safety will be maintained, and the fact that in furnishing such power for arc lighting the seller undertakes to supply and maintain the necessary lamps and carbons does not change the rule. In order to hold the seller liable it must appear that it continued to furnish and turn on the current after knowing that the purchaser had permitted the equipment to become defective."

The Kansas court reviews all the authorities on this question and concludes that the requirement of inspection by the power company of the various wires and appliances of consumer would be a burden practically impossible of performing and unreasonable and onerous.

In Schmeer v. Gas Light Company, 147 N. Y. 529, 30 L. R. A. 653, it was held that a gas company, before turning on gas in an apartment house where gas was being put in for the first time, should use reasonable precaution to ascertain that the pipes in the building are in such condition that the gas will not flow out into apartments of the tenants who have not applied for it, to their injury. But holds, further, that

there was no duty of additional or continuing inspection.

Turning now to the cases cited by defendant in error to sustain the theory of the trial court in this case. The case of Simmons v. Shreveport Gas & Electric Co. et al., 116 La. 1034, 41 South. 248, is not in point. This case involves the inspection and maintenance of the company's own lines where they came in contact with the lines of telephone companies or others; and the same is true of the case of Herbert v. Lake Charles Ice, Light & Waterworks Co., 111 La. 522. Ferrell v. Dixie Cotton Mills, 157 N. C. 528, 73 S. E. 142, 37 L. R. A. 64, is not in point. That case involved an injury to a child resulting from touching a charged guy wire. The defendant, the Dixie Cotton Mills, maintained this dangerous guy wire at a place where children played, and it was held liable. The question of inspection by the company furnishing the electricity was not involved.

Turner v. Southern Power Co., 154 N. C. 131, 32 L. R. A. (N. S.) 848, 60 S. E. 767, was decided on the theory that the defendant power company had negligently permitted excessive current to enter the wires and appliances owned by the plaintiff. In this case, at page 768, the court say:

"The court imposed throughout on plaintiff the burden of the issue as to defendants' negligence, and, under several prayers for instructions offered by defendants, he charged the jury that, if the injury was caused by reason of defective socket, or other appliances in the building, the defendants would not be liable, and in effect excluded every cause or feature of responsibility except that which might arise from an excess of voltage negligently conveyed or allowed to enter into the building by reason of the defective appliances of defendants."

And further, on page 770:

"When a thing which causes injury is shown to be under the management of the defendant, and the accident is such as in the ordinary course of things does not happen, if those who have the management use the proper care, it affords reasonable evidence, in the absence of explanation by the defendant, that the accident arose from a want of care."

In Haynes v. The Raleigh Gas Company, 114 N. C. 203, 26 L. R. A. 810, 19 S. E. 344, the defendant company had completed its line along a street. A guy wire running from one of its poles stretched across the sidewalk and charged with current from another guy line crossing the feed wire of a street railway company had become detached from a tree to which it had been fastened and was hanging to the ground. A boy walking along the sidewalk touched it and was killed. The court held that this proof made a prima facie case of negligence; but it was a question of electricity in the guy wire owned by the defendant company, and the inspection of privately owned wires was not involved.

The case of Lewis v. Bowling Green Gas & Electric Co. (Ky.) 22 L. R. A. 1169, and the case of Isaac Thomas, Adm'r, v. Maysville Gas Co. (Ky.) 53 L. R. A. 147, appear to sustain the doctrine that on account of the deadly nature of the electric current it is the duty of the generator and seller of such current to see to it that all the wires and appliances conveying such current, whether owned by the seller or privately owned, be in proper condition at all times to receive such current.

The force of these cases from the state of Kentucky seems to have been greatly limited by the decision subsequently rendered by the Court of Appeals of that state in Smith's Adm'x v. Middlesborough Electric Company, of the date of March 26, 1915, and found in 174 S. W. 773. The twelfth paragraph of the syllabus in this case is—

"Where an electric light company did not know of defects in the wires and apparatus within the building of one of its patrons, it was under no duty to inspect for such defects."

On page 780 of the text, we find the following statement of the rule as laid down by the court:

"The just rule seems to be that the electric light company should not be responsible for injuries received by persons arising solely from the defects in the wiring and appliances used for electric lighting purposes within their own houses, and which are owned by them, and over which they have entire control, and where the only connection between the company and the person using the lights is a contract between them and the company for the company to connect its system with the inside wiring of such parties and to deliver a current for their use, in the absence of knowledge on the part of the company of the defective condition of the wiring and appliances of such parties. In such a state of case the company would not owe such person any duty of inspection of their wiring or appliances. Although such inside wiring and appliances were defective, this would not excuse the company for injuries arising from its sending into the house a dangerous current of electricity, and without which the defects in the inside wiring and apparatus would have been harmless."

The cases cited by defendant in error from this court are not in point, as they do not, in any manner, treat of the question involved here, but simply fix the rule of care required by the power company as to lines and apparatus within its control.

It is our opinion that the great weight of authority is against this Kentucky doctrine, and it appears to have little, if any, support from the decisions of the other states. As it has been said in so many of the decisions quoted, the ramification of the business of the supply of electric power has so grown in recent years that it would be practically an impossibility that the power company generating and selling such electricity should inspect the wires and appliances of its consumers extending through various towns, cities, and rural communities and into and throughout practically all of the houses in the cities and towns. Further, the owners of the houses and premises who have constructed their own wires and purchased their own appliances would certainly have the right to exclude the power company from such inspection. There is no right granted to such a power company to intrude upon the private premises of the consumer. It is sought to differentiate the case we have here by reason of the fact that an extremely powerful current was sent over and upon the premises of the Inland Refining Company, and that on account of this extremely high voltage it was necessary that the seller of the current maintain an inspection of the wires upon the premises of the Inland Refining Company and an inspection of its appliances. It is argued that where the current is weak, as it is in the ordinary lighting of houses, no such inspection may be necessary, but otherwise, when the current is powerful. This argument cannot stand. It has not yet been determined just what voltage is necessary to produce death, and it is well known that the physical circumcumstances surrounding the contact with a charged wire or appliance determines, to a great extent, the amount of shock which is received. The Inland Refining Company, it appears, was carrying on a considerable business. What voltage was necessary to this company for its own use is not shown in the record. Whether the power was used solely for heating, elevator service, or other matters in its business requiring great voltage is not shown. The dispute is as to who owned and constructed the wiring system and installed the transformer. If the Inland Company owned the transformer, it was its duty, by means of such transformer

placed at such point as it should see fit, to reduce the voltage to its own need. If the Inland Company owned this transformer, it was impossible for the defendant to reduce the voltage by its own appliances. A great amount of electric power is used in this and many other states of the Union for mining purposes, for haulage under ground of large loads of coal and ore, for running pumps at these mines, for ventilating and lighting the same. These mines extend by passages and alley ways hundreds and thousands of feet at various depths under the ground. An electric power company takes this power to the line of the mine owner's premises and there delivers it into the wires, transformers, and appliances constructed and furnished by the mine owner, and the current so furnished must be intense to do the work. To hold that under such circumstances the power company must pass through all these various mines and regularly inspect the wires and appliances of such mine owner would be to place upon the power company a burden impossible of performing.

In the case we have here, if the wires and transformer upon the premises of the Inland Refining Company were placed there by the defendant company and maintained by it, the duty of inspection to provide against injury against any persons who might rightfully be expected to come in contact therewith might well be said to be upon the defendant here. The ownership and consequent duty of inspection of these wires was a question for the jury. But this was the question at issue in the case and which was disregarded by the trial court in its instructions. We make no suggestion as to whether the plaintiff here was, when he was injured, in a place where he had a right to be or where he could claim protection against injury from defective wires. It will be noted that the question here is not as to the condition of the wires at the time the current was first turned on, but their condition after the lapse of a long period of time after the construction was finished and the current turned on.

We therefore hold that the giving of instruction No. 11, as well as the giving of instruction No. 12, was error, prejudicial to the defendant, and instruction should have been given by the court defining the issue as to the ownership and the duty of maintenance of wires and appliances, predicating the liability of the defendant, if any there was, upon the ownership by it of these appliances, and the duty to maintain arising either out of such ownership or as assumed and practiced by the defendant.

Plaintiff in error insists upon its assignment that there was no proof justifying submission to the jury of the question of ownership of this wiring system; that the entire evidence showed ownership by the Inland Company. It insists that its demurrer to plaintiff's evidence should have been sustained and that its motion for a directed verdict at the close of all the testimony should likewise have been sustained. We are in serious doubt whether plaintiff's proof justified the submission of the case to the jury, but there was some proof which might justify the court in such submission of the issues.

We are therefore of the opinion that for the error above set out in the instruction of the court, the judgment in this case should be reversed, and the same is hereby done, and the cause remanded for a new trial in conformity with this opinion.

McNEILL, C. J., and BRANSON, HARRISON, JOHNSON, MASON, and WARREN, JJ., concur.