### BLASSINGAME et al. v. LONE STAR GAS CO.

#### No. 14289.

Court of Civil Appeals of Texas. Dallas.
Dec. 22, 1950.

Rehearing Denied Jan. 19, 1951.

Roland Boyd, McKinney, for appellants.

Thompson, Knight, Wright, Weisberg & Simmons and Adair Rembert, Dallas, and Wallace Hughston, McKinney, for appellee.

BOND, Chief Justice.

This suit is for damages resulting from a gas explosion. The appellants, Mary Edna Landers (joined by her husband Buford Thomas Blassingame, whom she wedded since the institution of this suit) and Alice Veal, joined herein by her husband James Veal, will hereinafter be designated as plaintiffs; and Lone Star Gas Company, a corporation, as the defendant.

The house in which the explosion occurred, all household and kitchen furniture, and wearing apparel owned by Mrs. Blassingame, were destroyed by fire, and Mrs. Veal was severely burned as a result of such explosion. The Lone Star Gas Company was the distributor of natural gas in the City of McKinney, Texas, and at the time of the explosion was servicing the Landers (Blassingame) house. The gas facilities were installed in the house two or three weeks before the explosion. Prior thereto, Miss Landers had been using butane gas at the home. The butane gas was conducted through pipes from a storage tank located some distance from the house. After the installation of natural gas facilities, Mrs. Blassingame ceased to use the butane except in her cook stove; the butane pipes were capped, storage stopvalves or cut-offs to the tank were closed, and the usual tests made for leaks in all connections. There is no affirmation or defense pleaded that the butane gas had any potent connection with the explosion,—only a small quantity of such gas being present in the tank. The defendant, however, contends that the butane gas was the cause of the explosion and fire; or, at any rate, that the explosion was not caused by the natural gas.

Briefly, the plaintiffs allege that the explosion which caused the fire and damage was the proximate result of the negligence of the defendant: (1) In the installation of the meter and its component parts or connections; (2) in the carelessness and default of the defendant in failing to inspect the meter and its component parts for gas leaks after installation; (3) in failing to repair the meter, after having been warned some time prior to the explosion that the

meter and parts thereof were leaking gas, as to prevent the gas escaping therefrom. In answer to plaintiffs' petition, the defendant alleged general and special denials, contributory negligence of the plaintiff Mary Edna Landers in using the gas and in failing to notify the defendant that the gas was escaping from its meter, if any was escaping prior to the fire; and that the explosion and fire were the result of an unavoidable accident.

The case was tried to a jury and at the conclusion of all the testimony and before the court had read or submitted special issues to the jury, the defendant moved for peremptory instructed verdict, alleging therein that there was no competent evidence showing that gas was leaking from defendant's meter or its component parts prior to, or at the time of, the commencement of the fire which destroyed the plaintiffs' property; that if such gas was escaping, there was no competent evidence that it was of sufficient quantity to cause a fire; that if any gas was escaping from defendant's appliances before the fire, same was not a proximate or contributing cause of the fire and damage; and forewarned that if the jury should answer any special issues that might be submitted, finding the defendant guilty of negligence proximately causing the fire, same would be without competent evidence,—merely the result of indulgence in presumptions.

While there is no record of the trial court's overruling the defendant's motion for instructed verdict, yet, in view of the court having submitted the case to the jury on special issues, it may well be assumed that the motion was overruled. At any rate, the trial court submitted the case to the jury without further objections or request by the defendant for submission of other issues. The jury found in effect, pertinent to the issues raised in the pleadings: (1) That the gas meter in question, after it had been installed by the defendant, became defective before the fire occurred, —thus permitting gas to escape therefrom; (2) that the defendant permitted the meter and its component parts to become defective before the fire in question,—thus allowing gas to escape therefrom, which was

negligence and a proximate cause of the explosion and fire; (3) that the defendant failed to inspect the gas meter after same was installed, which failure was negligence and a proximate cause of the explosion and fire; (4) that the plaintiff Mary Edna Blassingame notified the gas company of the presence of escaping gas at her house before the fire, and the gas company, after receiving such notice, failed to inspect its gas meter to ascertain if same was leaking, which failure was negligence and a proximate cause of the explosion and fire; (5) that the explosion and fire was not an unavoidable accident; and (6) that because of the explosion and fire, Mary Edna Blassingame's house was totally destroyed to her loss of $1,000; her furniture and household effects $700; her clothing and that of her minor children $300; and that the plaintiffs James Veal and his wife were damaged for personal injuries suffered by Mrs. Veal $225, and for medical expenses and doctor bills $25. It will be observed that the trial court did not submit any issue on the defendant's plea of contributory negligence, or any issue on new and independent cause of the explosion and fire, and no special issues were requested by the defendant.

The findings of the jury on the issues thus submitted were received by the court and entered of record in the court minutes. Thereafter, over plaintiffs' objections, the court sustained the defendant's motion non obstante veredicto and accordingly entered judgment in favor of the defendant on specific findings (as recited in the judgment) that the answers of the jury to special issues Nos. 7, 14, and 18 were without competent evidence to support such findings; —special issue No. 7 and its ancillary issues (Nos. 5 and 6) being to the effect that the defendant was negligent in permitting the gas meter, after it was installed, to become defective before the fire, thus permitting gas to escape, and that same was a proximate cause of the explosion and fire; special issue No. 14 and its ancillary issues (Nos. 12 and 13) to the effect that the defendant was negligent in failing to inspect the gas meter within a reasonable time after it was installed, and same was

a proximate cause of the explosion and fire; and special issue No. 18 and its ancillary issues (Nos. 16 and 17) being in effect that defendant was negligent in failing to inspect the meter, after being notified by Mrs. Blassingame of odor of escaping gas at her home, in order to ascertain whether same was leaking gas, and such negligence was a proximate cause of the explosion and fire. The court did not otherwise challenge the findings of the jury; thus entered judgment in favor of the defendant.

In the absence of objections to the court's charge and the judgment, we may well adopt the findings of the jury on all issues of negligence, leaving for our determination only the question as to whether or not the leakage of gas, emanating from defendant's meter and its component parts, was the proximate cause of plaintiffs' damages. We adhere to the verdict of the jury. There was evidence warranting the trial court's submission of the issues making inquiry whether the various acts, as alleged by plaintiffs, were negligence,—thus causing gas to escape, enter beneath the floor of the house, and seep through the floor into the kitchen, where the explosion occurred.

■ It is generally known that natural gas is highly explosive and dangerous; that a person engaged in its distribution to his customers must exercise a high degree of diligence and care, commensurate with the dangers incident to its use, to prevent the gas from escaping. Lane v. Community Natural Gas Co., 133 Tex. 128, 123 S.W.2d 639. In the operation of the business a party is bound to exercise that degree of care and diligence as to avoid injury to his customers by the escape of gas while it is being carried through his pipes, meters, and regulating devices. Ordinarily a Company is not responsible for such leakage except from its own service facilities. The degree of care required has been variously stated to be ordinary care, due care, due and reasonable care, great care, a high degree of care, and the highest degree of care, according to the exigencies which require vigilance and attention, and conforming in amount and degree to the particular circumstances under which it is to be exerted. Thus, in view of the highly dangerous character of gas and its tendency to escape, a gas company must exercise a degree of care to prevent damage commensurate to the danger which it is its duty to avoid. 38 C.J.S. Gas, § 42. Not only must a gas company see that its pipes and other service facilities are properly laid and functioning at the time of their installation so that gas will not escape therefrom, but, because of the dangerous character of the commodity, the company must maintain such a system and inspection as will insure reasonable promptness in the detection of any leak that may occur through deterioration of materials used; and when a gas company has actual notice, or information of escaping gas at a customer's house, it must exercise the highest degree of care and diligence to detect and prevent further escape of the gas from its service facilities.

■ In determining the issues as reflected from the record in the case at bar, we must regard the evidence and the findings of the jury in the light most favorable to the plaintiffs. Only where there is no evidence, or the evidence is of such character as to be of no probative force or value, may a trial judge take a case from the jury and himself decide the issues. It is not what the judge may think or find the facts to be, if he has been the trier of the facts. It is the exclusive province of the jury to weigh the evidence and the credibility of the witnesses.

It is uncontroverted in the case here that there was an explosion in the Blassingame home, which resulted in the fire and the plaintiffs' damages. There is no evidence that there was ever present in the house the odor of butane gas escaping from the butane tank or pipe connections; and there is no evidence that during the conflagration there was any butane gas escaping from the discarded butane service facilities; or that there was any blazing of butane gas from the service pipes. The only evidence to give rise to the defensive theory that the explosion and fire were due to butane gas, is that butane gas is heavier than air and thus seeks a lower level, while

natural gas is lighter and diffuses upward, and that the injuries sustained by the plaintiff Mrs. Veal were to the lower extremity of her body,—legs below the knees.

The rule of law requires that the damages chargeable to a wrongdoer must be shown to be the natural and proximate effect of his delinquency. We are of the opinion that the defendant's theoretical conclusion that butane gas was the cause, or contributing cause, of the plaintiffs' damage is not borne out by the record. Manifestly, there being no evidence of escaping butane gas at the home in question, we must seek some cause for the gas explosion resulting in plaintiffs' damage. Indeed, the burden of proof was upon the plaintiffs to show by a preponderance of the evidence (as was given in the court's charge to the jury) not only that defendant was guilty of negligence, but that such negligence was the "proximate cause,"—the natural and continuous sequence—that produced the event, or explosion. The question of whether or not an act, or an omission, is a proximate cause is a question for the jury, taking into consideration all the testimony and legal elements that make up such cause. A jury may not speculate as to the cause, merely because a party is negligent. The negligence of the wrongdoer must be shown to be the cause.

The record evidence shows that in servicing the house in question the defendant gas company installed its meter to measure the gas used by the customer and attached thereto a regulator to gauge the gas pressure going into the house. These facilities were located at the south side of the house, near a hole through the house underpinning. The hole was about 2 ft. square, or about 2 inches square (evidence conflicting), through which a 1¼ inch service pipe was inserted, attached to the meter, and extended beneath the floor of the house and connected with lateral pipes. The lateral pipes passed through holes drilled for that purpose in the floor of the house, and attached thereto were gas jets or gadgets. One of these holes through which a lateral pipe entered the kitchen of the house, was near the place where Mrs. Veal was standing at the time of the explosion. She was cooking on a "hot-plate,"—a small two-burner stove, movable at will, which was attached to another jet or gadget in the adjoining room by rubber tubing. The house was of wooden structure, weather-boarded with timber, with imitation brick composition siding extending around the house, to the ground,—except over the holes as above stated. The floor was also of wood. Beneath the house the space was "more or less closed up" by the underpinning. Mrs. Blassingame testified that soon after the natural gas was turned on and meter installed by the gas company, she complained of natural gas odor in the house; and, being unable to detect the escaping gas, made complaint to the gas company; telling them she had done all she knew to do, but could find no leak in the house, and asked them to check the service. She further testified that she was not at home when the fire occurred; on being advised that her house was on fire, she came home, and when she arrived at the house it was almost "burned up," the gas meter was burning, flames all around it, and a strong wind coming from the south. A Mr. Bennett, brother-in-law of Mrs. Blassingame, testified that he heard of the fire and, just as quick as his car would take him, he went to the house in question. On his arrival the roof had fallen in, and the southwest part of the wall on the side where the meter was located, was still standing; about one-fourth of the southeast corner of the top of the wall was burned and the meter was at that time on fire. He further testified that he was living in the house when the natural gas was turned on; that he smelled natural gas escaping and immediately called the gas company, telling them he believed the meter was leaking and for them to check it. A Mr. Quisenberry testified that when he installed the meter and regulator at the house in question, he tested them and all connections and service lines to detect leaks,—and that he found no leaks. A Mr. Smith testified, among other things pertinent here, that:

"Q. And when you got around to the south side, is it not true that you could see that the fire from the floors of the house had burned all around where you later

found the meter to be? A. Yes, sir. The walls were completely gone.

"Q. The walls were burned up where the meter was? A. There was an upright —I judge—I don't know whether you call that a joist along the floor, where the planks of your floor are on—that had been burned in two.

"Q. But the wall itself—. A. But the wall itself was burned away on that particular side.

"Q. The meter was right there against the wall, wasn't it? A. I don't know where the meter was, sir.

"Q. You know it was a few inches or a few feet of the wall—or practically a foot of the wall? A. I don't know, because by the time I saw it, there was no wall there.

"Q. The wall was gone when you got there. So whatever wall was there, that was close to the meter, had burned down by the time you got there? A. Yes, it had." He further testified that: "After the fire was fairly well put out. The roof had caved in and the walls were down. The fire was what we call the last stage, or practically out. I relieved someone of a nozzle on the south side of the house.

"Q. While you were there on the south side of the house fighting that fire, did you look at the gas meter? A. Well, when I first got there, there was enough fire there I couldn't see the meter. But later on, after I put the fire out—it was blazing. There were small blazes anywhere from a foot, two feet or three feet high along on that side of the house. Later on, after I had extinguished all the blaze, and got down and moved in a little closer to move things around and put it out, I did extinguish the meter, yes, sir.

"Q. Did you notice anything about the meter at that time? A. While I was fighting the fire, there was one blaze that was stubborn and I couldn't put out. After fighting the fire and putting all the other blazes out, and after I moved in close to where I could see, and things were still smoking quite a bit. And I finally moved on in there where I could see this, and there was a blaze coming from what looked like the meter." A Mr. Scott testified that

he arrived at the fire when the home was better than half consumed, the wall on the south side where the gas meter was located being consumed and the gas meter in flames.

Mr. Reeves testified that he was in the yard at the time of the fire and that as he passed the window on the south side he heard a noise in the house like something had fallen, breaking the glass in the window, the broken glass hitting him in the face; that the girl, Mrs. Alice Veal, came out of the door and advised him not to go in, as the house was on fire. Mrs. Veal testified that about 10 o'clock on the morning of the fire, she lighted both burners of the stove employed by her in cooking, and, while standing before the stove, fire "crawled" down the pipe with a "swishing noise"; the concussion blew out the window on the north side of the house and the fire ranged along the wall and ceiling of the kitchen. She further testified that there was a fire in a heater in one of the bedrooms which had been burning for some time prior to the concussion.

It is undisputed that the defendant, after being warned of escaping gas, made no inspection of its service facilities, and had not inspected its meter and connections since installation. It is in evidence that, at the time of installation, the meter was inspected and tested, and that it did not leak. It is further in evidence that the gaskets between the connections of the meter and the regulator were of non-fire-resistant materials.

It is the theory of plaintiffs that gas escaped from defendant's meter and regulator located near the south side of the house in question, in front of the opening in the underpinning of the house; that a strong wind blowing from the south caused the escaping gas to follow the line of least resistance through the hole in the wall, collecting beneath the floor, and emerging from beneath the house through another hole in the floor where Mrs. Veal was standing; that it there came in contact with the flames of the cook stove and ignited. The jury having found in effect that plaintiffs' theory was true, resulting in

plaintiffs' damage, caused by defendant's negligence in its failure to exercise that degree of care and diligence required in detecting the escaping gas, the trial court was not warranted in holding that such negligence was not the proximate cause of the explosion and fire, and should have rendered judgment on the findings of the jury in favor of the plaintiffs. A similar situation was before the court in Southwestern Gas, Light & Power Co. v. Jay et al., Tex.Civ.App., 275 S.W. 735, writ ref., the court sustaining the judgment against the wrongdoer.

On the findings of the jury, it becomes the duty of this Court to render such judgment as the trial court should have rendered. The judgment of the trial court is, therefore, reversed and judgment here rendered in favor of the plaintiff Mary Edna Blassingame for damages to her house in amount of $1,000, $700 for her furniture, and $300 for her wearing apparel and that of her minor children,—total $2,000; and in favor of the plaintiff James Veal for the injuries sustained by his wife, Alice Veal, the sum of $250; with legal interest on the respective amounts until paid and all costs of suit.

Reversed and rendered.

## On Rehearing.

In motion for rehearing the appellee offers numerous critical objections which we deem immaterial to our conclusion or hurtful to appellee's contentions, as evidenced from the record and our former opinion. We adhere to our disposition of this appeal, supplemented here with authorities hereinafter related holding to the effect that a company engaged in supplying customers, through its service facilities and facilities owned and installed by the consumer, with highly dangerous public services such as gas or electric power, is liable for its failure to inspect all such facilities as will insure promptness in detecting any dangerous delinquency of which the company had prior notice or which it might have detected by maintenance of a guarded system of inspection.

In the case here there is evidence of an explosion and that natural gas was escaping and had been escaping either from defendant's service facilities or from the facilities installed and owned by appellants for some two weeks before the explosion, and that the gas company had received notice of the escaping gas, but made no inspection or test for the escaping gas after receiving such notice.

In the case of Minnesota Electric Light & Power Co. v. Hoover, 102 Okl. 270, 229 P. 285, citing R.C.L., the court (Syl. 5) holds: "The liability of the power company, if any, must be predicated upon its *knowledge of the defective condition* in case of wires or appliances not owned nor installed nor controlled by it." (Emphasis ours.) In 18 Am.Jur., p. 498, sec. 102, text supported by authorities in footnotes, under the Caption "Defective Appliances Not Owned or Controlled by Company," it is stated: "It is generally held that where the electric wires or other appliances which have caused injury are not owned or controlled by the company furnishing the power, such company is not liable for the damage sustained. The company furnishing the current is not bound to inspect such lines, wires, and appliances to discover defects in insulation or other dangerous conditions; and unless the current is supplied with *actual knowledge of such conditions* its responsibility ends when connection is properly made under proper conditions and it delivers the current in a manner which will protect both life and property." See also, 24 Am.Jur. p. 685, sec. 29, et seq.: "Sec. 29. Notice of Leak. Where a company has notice of a break or leak in its pipes, it must use due care and diligence to prevent the escape of gas, either by cutting off the flow or by repairing the break. * * * The company's liability, in such instance, depends not upon its knowledge of the defective condition of the pipes or of the escaping gas, but upon its failure to exercise proper care. * * *." Id. "Sec. 32, Defects in Customers' Pipes. —The general rule requiring the use of ordinary care and diligence on the part of a gas company applies to its delivery of gas

534

into the buildings or residences of customers. Generally speaking, however, a gas company which does not install pipes in a customer's building, and which has no control over them, is in no way responsible for the condition in which they are maintained and, consequently, is not liable for injuries caused by a leak therein of which it has *no knowledge*. The company is warranted in assuming that the interior system of pipes is sufficiently secure to permit the gas to be introduced with safety. However circumstances may be such as to require an inspection of pipes on private property before turning gas into them. The question of liability under such circumstances is generally determined by the particular facts of each case and is frequently a question of fact submitted to the jury. If a gas company *knows,* at the time it turns on the gas, or, after turning on the gas, becomes aware, that there are defects in the pipes, or if the company is in possession of facts that would suggest to a person of ordinary care and prudence that the pipes in the building are leaking or are otherwise unsafe for the transportation of gas, the company is under a duty to make such an inspection or investigation as a person of ordinary care and prudence, similarly situated and handling such dangerous agency, would make to ascertain the safety of the pipes, before it furnishes or continues to furnish gas through them. If the gas company fails to do this and furnishes or continues to furnish gas through the pipes, it does at its own risk and becomes liable for an injury resulting therefrom to any person in the building who is without fault. Similarly, a gas company *knowing* that the service line, which it is under no duty to repair or maintain, is rusted or corroded to such an extent as to permit gas to escape must cause the line to be repaired by the person whose duty it is to do so or must shut off the gas at the street." (Emphasis ours.)

We have again carefully reviewed the record in this case and the contentions of appellee in motion for rehearing. We find no reason to reverse our conclusion; appellee's motion for rehearing is overruled.